## PETERS & MILLARD *v.* MRS. C. TOBY.

A friend of Mrs. *Toby*, whose husband was in embarrassed circumstances, advanced money to invest
for her benefit. Some portion of the money thus advanced was appropriated to the purchase of
the property which has given rise to this suit, some of it was appropriated to its improvement. The
title to the property was taken in the name of *Lockett*, but for many years Mrs. *Toby* and her
family resided on it, and she, to all appearances, was the owner. *Lockett* set up a claim against
Mrs. *Toby* for rent, she disputed the claim and he denied her title, which was, at once made the sub-
ject of litigation between them. The Court sustained Mrs. *Toby*. The present plaintiffs, having
recovered a judgment against *Lockett*, and having recorded it, before the decree in favor of Mrs.
*Toby* in the suit for the property was rendered, brought the present action against Mrs. *Toby*, al-
leging that they had, by virtue of their recorded judgment, while the title stood in *Lockett's* name,

a mortgage to secure the payment of their debt. But it appearing that plaintiffs were always aware of the true situation of the parties in relation to the ownership of the property, and as it did not appear that plaintiffs credited *Lockett* upon the strength of his apparent ownership; it was held that Mrs. *Toby's* title was not affected by the mortgage of the plaintiffs against *Lockett*.

APPEAL from the District Court of Jefferson, *Clarke,* J.

C. *Roselius,* for plaintiff and appellant. *R. N. Ogden,* for defendant.

BUCHANAN, J. This proceeding has the form of an hypothecary action, instituted in the *via ordinaria* after ten days previous demand of defendant to pay a judicial mortgage held by the plaintiffs against one *Henry Lockett*, and which they pretend bears upon property in the possession of the defendant.

The petition, after stating that plaintiffs had obtained judgment against *Lockett* in the First District Court of New Orleans, allege that their judgment was recorded in the parish of Jefferson on the 18th May, 1848, at which time *Lockett* held a written title to certain real estate situated in said parish and particularly described; which real estate, says the petition, has, since the recording of said judgment, been decreed by the judgment of the District Court, affirmed by the Supreme Court, to belong to defendant, who occupies the same.

The defendant pleaded besides the general issue, that the property described in the petition was and always had been occupied by himself, and had never been liable to the judgment of plaintiffs against *Lockett*; that although *Lockett* had held a written title to said property, yet the plaintiffs had always been aware that *Lockett* never had either the possession or ownership of the same, but that it really and truly belonged to defendant; and that the judgment in the suit of *Toby* v. *Lockett*, referred to in plaintiffs' petition, had not conferred any new title upon defendant, but only recognized and decreed that she had always been the real owner of said property.

From these pleadings it appears that plaintiffs have no claim against defendant directly, but only in virtue of a recorded judgment against *Lockett*. They are seeking to render property which they acknowledge to be in the occupancy of defendant, and to belong to defendant, liable in satisfaction of their judgment against *Lockett*.

The plaintiffs do not pretend that the property now belongs in reality to *Lockett*. They do not allege any error, fraud, collusion, or other nullity in the judgment by which, (to quote the language of their petition) "said square, buildings and improvements, have been decreed to belong to Madame *Clemence Toby* of said parish of Jefferson, who occupies the same."

They appear to rely entirely upon the fact that the judgment in question was rendered since the recording, in the parish of Jefferson, of their own judgment against *Lockett*.

To this the defendant replies, " true it is, my judgment against *Lockett* was rendered after the 18th May, 1848. But that judgment conferred no new title on me. It merely recognized a preexisting title in me, not derived from *Lockett*, but adverse to his pretended title; which by the same judgment was pronounced to have no effect or validity."

The record of the suit of *Henry Lockett* v. *C. Toby*, was offered by defendant and received in evidence without objection. From this record it appears that *Lockett* having instituted a suit against Mrs. *Toby* before a Justice of the Peace, in the parish of Jefferson, claiming rent for the premises in question, Mrs. *Toby* sued out an injunction in the District Court, for the parish of Jefferson, on the 5th January, 1850, denying *Lockett's* title to the property, and al-

leging that the Justice of the Peace was without jurisdiction to try the title to real estate ; professing at the same time her willingness to try the question of title to said property in a regular petitory action, before a Court of competent jurisdiction.

In answer to this petition *Henry Lockett*, assuming the character of plaintiff in a petitory action, claimed the property in question as belonging to himself in virtue of a purchase by authentic act from *William McCawley* on the 2d November, 1838 ; and prayed for citation and for a judgment against Mrs. *Toby*, decreeing him (*Lockett*) to be the owner of the property, to be put in possession of the same, and to recover of defendant one thousand dollars damages for her alleged detention of the same.    To this demand Mrs. *Toby* joined issue, and answered, alleging that the purchase made by *Lockett* on the 2d Nov. 1838, from *William McCawley*, although made in his own name, was in reality made for Mrs. *Toby*, and paid for with her money ; that *Lockett* was the trustee of her, Mrs. *Toby*, and never the real owner of the property ; that she had made large and valuable improvements on the property ; that herself and family had resided thereon for ten years and upwards ; that she had always been esteemed the owner, and recognized as such by *Henry Lockett* himself, until he brought the suit against her before the Justice of the Peace.

Mrs. *Toby's* answer concludes by praying to be decreed the true and lawful owner of the property.

Upon this issue the defendant had judgment, which, upon appeal, was affirmed by the Supreme Court, as stated in plaintiffs' petition.

It is manifest from this examination of the record in question, that the defendant does not hold by a title derived from the judgment debtor of the plaintiffs, but by a title adverse to his.    The judgment in the case of *Lockett* v. *Mrs. Toby*, has established the fact that Mrs. *Toby* was the owner of the property in question, since November 2d, 1838 ; and we do not see how the creditors of *Lockett* can have greater rights upon the property than *Lockett* himself.    The mortgage lien of plaintiffs in virtue of the registry of their judgment, necessarily depends upon the ownership of *Lockett*.    This failing, the lien fails with it.    If, indeed, it had been alleged and proved, that the suit and judgment between *Lockett* and Mrs. *Toby* was collusive, the case would be different.    If it even appeared that *Peters & Millard* had given *Lockett* credit on the strength of his apparent ownership of the land in question, an equity would have existed in favor of the plaintiffs, which the case is now far from presenting ; for it is alleged by defendant, and has been proved to our satisfaction, that the plaintiffs were always aware of the true situation of things in relation to the ownership of this property.

There cannot be a doubt that the circumstance of a person allowing another to hold the paper title of property of which he is the real owner and possessor is highly suspicious, and that the uniform current of decisions in this State has been to discourage simulation, and to prevent the public registers from becoming a vehicle of falsehood and deception.    For that purpose, the greatest latitude has been allowed to creditors and others interested, to show the real nature of conveyances made to their prejudice.    But we look in this record in vain for any evidence of injury done to these plaintiffs by the imprudent and misplaced confidence of the defendant in Mr. *Lockett*, as manifested by her suffering her property to remain in the name of the latter for so many years.    The account that defendant gives of her acquisition of this property is, that it was

purchased for her as a home, by means of a donation of funds made to her for that purpose by a friend, and that soon after its purchase, it being entirely unimproved, defendant's husband commenced to build for her a dwelling house, and to make all necessary improvements upon it, paying for the same out of the said donation; and one of the witnesses of defendant, *Alexander Baggett*, the builder of the house of defendant, on this property, confirms by his evidence this allegation of the petition. He says that it was well understood by Mr. *Peters*, one of the plaintiffs, at the time the witness was building the house, that Mr. *McKinney* had furnished the funds for the purchase of the property and for the building, and that it was intended as a home for Mrs. *Toby*. Witness understood that this fund was a gift from *McKinney* to Mrs. *Toby*. In these conversations (between the witness, *Toby*, *Lockett* and *Peters*) it was understood that, as Mr. *Toby* had failed sometime before, the property was bought in the name of *Lockett* as a friend of the family, to protect it for Mrs. *Toby* from the creditors of her husband. Now in all this, it does not appear that any parties had an interest adverse to the title of defendant, except the creditors of *Toby*. But no creditor of *Toby* has presented himself. There is neither allegation nor proof that *Peters & Millard* are creditors of *Toby*; and if they were, the presumption of fraud is most strongly repelled, by the circumstance that they were informed at the time that the purchase, though made in *Lockett's* name, was made for Mrs. *Toby's* account. Nor does this witness, *Baggett*, stand alone. *Francis Gasten*, the confidential clerk and book-keeper of plaintiffs, a witness introduced by plaintiffs, and intimately acquainted with all the parties mentioned, proves that the property was always called and looked upon by the public, as Mrs. *Toby's;* and that he, himself, never heard that *Lockett* had any claim to it until the institution of the petitory action. *Peters*, *Lockett* and *Toby*, says this witness, were intimate friends.

Upon this state of facts, we do not think that plaintiffs are entitled to maintain this action,

It is therefore adjudged and decreed, that there be judgment for defendant, with costs in both Courts.

SLIDELL, C. J. It is not alleged nor proved that at the date when plaintiffs became the creditors of *Lockett* and recorded their judgment, or since, the legal title in *Lockett* was recorded; which it is fairly deducible from evidence, admitted without objection, and while the District Judge believed, that at those dates, the equitable title then existing in Mrs. *Toby* and accompanied by long, open and notorious possession, was known to *Peters*. In consideration of above circumstances, I concur in the affirmance of the judgment.