Hon. C. VOORHIES,
Hon. A. M. BUCHANAN,
Hon. J. N. LEA,
Hon. H. M. SPOFFORD,
} *Associate Justices.*

---

## H. LOCKETT *v.* Mrs. TOBY.

*Where a party to a cause* should have been present *on the trial, the admissibility of the evidence offered against him must be tested by the same rules as* though he had been present; *and the admission of such evidence against the absent party as might have been received with his consent if he had been present, is not an error of law, and no relief can be granted merely on an assignment of errors. For the Supreme Court cannot examine objections to evidence, which were not made on the trial, nor questions of the admissibility of testimony, unless regularly presented by a bill of exceptions or other equivalent mode.*

APPEAL from the District Court of Jefferson, *Clarke,* J.
*Hunt* and *Roselius,* for plaintiff and appellant. *Ogden & Leovy,* for defendant.

PRESTON, J. The controversy between the parties in this case is for a square of ground in the city of Lafayette. Mrs. *Toby* obtained a verdict and judgment for the property, in the absence of the plaintiff. He applied for a new trial, which was refused, and he has appealed.

He applied for a new trial, on the following grounds :

1. That the cause was tried in his absence, without any fault or neglect on his behalf.

2. Because the verdict was rendered upon illegal evidence, testimony, documents and papers, which should have been rejected by the court.

3. That, on the legal evidence in the cause, verdict and judgment should have

90

LOCKETT
*v.*
TOBY.

been rendered for Mr. *Lockett*, the real plaintiff in the cause; and if not, that there should have been only a nonsuit for his failure to appear and prosecute his claim.

The *Third Rule of Practice adopted by the court is in the following words* :

"The calendar of issues shall be called on each Friday, at 10 o'clock A. M., of the term. A list of the ordinary civil cases fixed for trial shall be hung up in the court room, which shall be notice to the parties. Jury causes and court causes shall be called at the discretion of the court, regard being had to the number of causes pending on the respective calendars."

Formerly, it had been the custom of the court to fix jury trials for the first week in the term; but the District Judge says, in refusing the new trial, " That this custom of the court had been discontinued more than two months preceding the fixing of this cause, and the party must have been informed of it, if present in court on the regular days for the calling of cases."

Be that as it may, the printed Rules of the court left it to the discretion of the court when to call and fix jury cases for trial, and when court cases. In pursuance of the rule and this discretion, the court ordered jury cases to be called on the regular day for fixing cases, for the third week in February, and this case was regularly called and fixed for trial on the 17th day of February, 1850, and due notice thereof given to all parties interested, in pursuance of the rule, by posting up a list of the causes thus fixed for trial in a conspicuous part of the court room.

The defendant was himself an attorney-at-law, well acquainted with this rule, and the more so as the same rule is adopted and practice' pursued in all the courts of the adjoining city of New Orleans. By reasonable care and diligence, he and his counsel might have known the condition of the cause, and been present at the trial. We must adhere to the decision of this court in the case of *Riley* against the *City of Louisville.* The great and increasing legal business of New Orleans and the adjoining cities could not be transacted without a rigorous adherence to the printed Rules of Practice, when demanded and insisted upon by parties to suits.

We cannot say that the District Court exercised his discretion illegally in refusing a new trial on the first ground ; and this view of the case disposes of the second ground. For, if the plaintiff *should have been present* on the trial, the admissibility of the evidence offered against him must be tested by the same rules as *though he had been present.* Now it has become a principle perfectly settled that this court cannot examine objections to evidence which were not made on the trial, nor the question of the admissibility of testimony, unless regularly presented to us by a bill of exceptions or other legal mode equivalent thereto. We cannot determine whether or not the deposition of *McKinney* should have been admitted as evidence in the case, nor, indeed, any of the other evidence on the trial, since none was objected to, and no objections are presented to this court by bills of exception, or otherwise. See *Beard* v. *Pritchard*, 9 Rob., 464 ; *West* v. *His Creditors*, 4 An. Rep., 447 ; *Summerville* v. *Young*, 3 An. Rep., 290; *Prebel* v. *Bales*, 3 An. Rep., 627 ; *Curtis* v. *Woodman*, 2 An. Rep., 309.

The evidence, which has been spread upon the record without objection, fully supports the verdict and the judgment, and renders it unnecessary for us to investigate the question so much discussed in this case, whether trusts can be created in this State by donation, notwithstanding the Article 1507 of the Civil Code, and whether one who claims under an act can, by parol evidence, give it

a different effect from that which is expressed in the act, notwithstanding the Articles 2233 and 2256 of the Code. For if, notwithstanding the conclusive effect which the law seems to give to authentic acts in relation to real property, as to all who claim under them, the parties make no objection to the investigation of their effect by other evidence, it is not for the courts to supply those objections in opposition to the probable truth of the case.

It is urged that there should have been a judgment of nonsuit, and not a final judgment against the plaintiff. There were two suits consolidated, in which the parties were reciprocally plaintiffs and defendants. The plaintiff sued for the land, the defendant to have her possession quieted against his paper title. She was entitled, in consequence of their consolidation, to have a final judgment in the whole case.

It is therefore decreed that the judgment of the District Court be affirmed, with costs.

## Same Case, on a Re-hearing.

Rost, J. We held, in this case, that if *Lockett* had been present at the trial, he might have waived any legal objection to the evidence offered by Mrs. *Toby* to establish her title, and that, as he ought to have been present, the admissibility of the evidence offered against him must be tested by the same rules as though he had been present, and we would not supply objections to testimony which he had neglected to make, in opposition to the probable truth of the case.

It is urged that there is error in this ruling, on two grounds:

1st. That even if *Lockett* had been present at the trial, and had consented to admit that evidence, it was the duty of the Judge *ex officio* to reject it.

2d. That, if the evidence offered would have been admissible with the consent of *Lockett*, he was absent, did not actually give, and cannot in law be presumed to have given, that consent.

The 11th Article of the Code lays down the general rule that individuals may renounce what the law has established in their favor, when the renunciation does not effect the rights of others, and is not contrary to the public order or good morals.

It is clear that the rights of third parties could not have been affected by the consent of *Lockett* to admit the evidence. What is done in this suit is to them *res inter alios acta.* *Babineau* v. *Cormier,* 1 N. S., 459.

It is equally clear that such a consent, so far from being against good morals, would have been, as the result has shown, in furtherance of justice and truth. The only question, then, on this part of the case is, whether the law providing that no parol evidence of verbal sales of real estate shall be admitted, is a law made for the preservation of public order, from which individuals cannot derogate by their conventions? And here it must be premised that the class of laws considered as affecting public order, is not the same in all countries, but varies in each, according to their institutions, the degree of freedom which they enjoy, and the system of jurisprudence by which they are governed. A comparison between the registry laws of Louisiana and those of our sister States, will illustrate our meaning. With us, those laws are considered as founded on public policy, and the want of registry cannot be supplied. In the other States they are viewed differently, and notice in any form is held to be equivalent to registry.

Many authorities have been adduced to show that in France, whenever the law prohibits the reception of testimonial proof, the prohibition is considered as addressed to the Judge, and that he is bound to reject it, without regard to the consent of parties. This proposition is too general in its terms. It takes for granted that all such prohibitions are founded on motives of public order; and if this should be true, under the laws of France, it does not necessarily follow that it is equally true in Louisiana. The French jurists, in applying this rule of interpretation to Art. 1341 of the Napoleon Code, merely followed the previous jurisprudence of the country, under the *Ordonnance de Moulins*, and the subsequent ordinance of 1615. The same expressions are used in the ordinances and in the Code. Both say : "*Il ne sera reçu aucune preuve par témoin*," etc. Art. 1715 of the same Code again repeats: "*La preuve par témoin ne peut être reçue.*" From the identity of the expressions used, it is manifest that the authors of the Code intended to make no change in the law, and as it had heretofore been considered that these prohibitions concerned not only the parties interested, but the public at large, it is now held in France to be the duty of the Judge to enforce them, without regard to the waiver of parties.

But how was it with our legislators when they first introduced analogous prohibitions in the Code of 1808 ? Did they intend to make a radical change in the jurisprudence of the country, and to consider as made for the preservation of public order, laws without which public order had been maintained from the foundation of the Spanish monarchy ?

It is well known that under the laws of Spain, which governed Louisiana at the time of the cession, sales of real estate could be proved by parol, and whether or not they were reduced to writing, was a matter for the consideration of the parties, in which the public was supposed to have no interest.

When, in the case of *Babineau* v. *Cormier*, the question first arose, under the old Code, whether testimony affecting the title to land which had been given in the District Court without any objection to its introduction, should be disregarded on the ground that it was illegal evidence, the court might, perhaps, by a strict adherence to the letter of the law, have adopted the principle of the law of France. But it was more logical to disregard the foreign interpretation, and to expound the law so as to make it harmonize with the settled jurisprudence of the country, as the French jurists had done. It was accordingly held, that parties have a right to acknowledge a parol contract for land, and to consent that their stipulations in regard to it may be proved by oral evidence.

The same principle has been recognized under the new Code, in the case of *Strawbridge* v. *Warfield*, 4 L. R., 22. In that case, the court says: "The Judge of the court of the first instance considered the verbal sale of the slave was null; but we differ with him on this point. Under the provisions of our old Code, the jurisprudence of this court was well settled, that parties had a right to admit a parol contract for the sale of immovable property; and that if they chose they might, as they did in this instance, admit parol evidence to prove it. The late amendment to the Louisiana Code has not changed the old Code, except in recognizing the validity of a verbal sale, and in establishing by their authority the doctrine that the exclusion of parol testimony in relation to contracts of the description of that before us, is a privilege which the parties may waive."

We think with our predecessors, that the recognition by the new Code of the validity of verbal sales of real estate, where the possession has passed to the purchaser, is conclusive as to is right to establish it by all such evidence

as the vendor does not object to. It is to be observed that no such exception is found in the Code of France.

The jurisprudence of the State on this question is settled by these decisions, which appear to us well considered, and we adhere to them.

The authority from the English Common Law Reports relied on, is only applicable to cases of evidence illegal *per se*, which we consider the evidence in this case not to be. *Shaw* v. *Roberts*, 2 Starkie's Cases, p. 455 ; 3 Eng. Com. Rep., 486 ; 1 Starkie, p. 423, sec. 39.

The cases relied on in support of the second ground, are those of *Medley* v. *Wetzler*, 5 An., 217 ; *Louisiana State Bank* v. *Senecal*, 9 L. R., 226 ; *Michel* v. *Dolliole*, 1 An., 459.

The first was a judgment by default, in which we held that the District Judge had the right to refuse to act at an *ex parte* hearing upon testimony, irregularly obtained on commission by the plaintiff; but even in that case, which is the last decided, we reserved the question whether the Judge was bound to refuse such evidence.

The case of *Senecal* was also one of a judgment by default, in which the former Supreme Court held, that as the defendant had not appeared, no evidence could be legally given of a fact not alleged in the petition. The opinion of Judge Martin in that case is as follows : " The defendant having appealed from the final judgment, he seeks to reverse it in this court, and assigns, as an error apparent on the face of the record, that it is nowhere alleged that notice of protest was given to him.

" The counsel for the bank urges that notice may have been proved on the trial, and before obtaining final judgment. He further c ontends, that no defect of pleading can be assigned as error on the face of the record, which might be cured by legal evidence. This would be correct, if there had been a trial *on an issue made up by filing an answer*, for then the consent of the party might be inferred from the want of objection being made to the omission or defect. But in the absence of any defence, no evidence can be legally given of a fact not alleged in the petition."

NOTE.—This final decision in this case, on a re-hearing, was rendered in January, 1852, and therefore properly belonged to those records which had been disposed of before the present Reporter came into office. On the suggestion of one of the Judges of the Supreme Court it is now printed.—[REP.