ST. PAUL, J.
 

 Relator was the owner of certain real estate on which there was a homestead mortgage of $4,000. He made a nominal sale thereof to one Thiberville for the recited consideration of $1,500 cash and the assumption of said mortgage, which deed was duly recorded. In point of fact, this sale was simulated and made for convenience only. The supposed purchaser paid no cash and paid nothing on the mortgage which he nominally assumed, nor was he expected to do so. The vendor remained in possession of the property and continued to make his payments to the homestead. The supposed purchaser at once gave relator a counter letter acknowledging that he had no interest in the property and that same belonged to relator. But this counter letter was not registered.
 

 I.
 

 For some three years and more the property stood on the public records as belonging to Thiberville, who then retransferred it to relator, reciting the circumstances as above stated.
 

 But in the meanwhile, certain creditors of Thiberville had obtained judgments against him and had1 recorded same as judicial mortgages against all his property.
 

 It is not shown that Thiberville’s creditors gave him credit or took judgments against him and recorded them with actual knowledge that the property stood in his name, or that they had any other knowledge than that which the law presumes from the fact that it stood as his upon the public records.
 

 II.
 

 This is a proceeding to cancel and erase from the records the inscription of said ju’di
 
 *97
 
 eial mortgages in so far as they affect this property on the ground urged by relator that “recorded judgments against a simulated transferee of property do not operate as judicial mortgages against the property in the absence of circumstances creating an estoppel against the owner”; which seems to be an established principle in courts of equity and common law, but which the defendants contend is not the law of this state.
 

 The trial judge held with the defendants, and the relator appeals.
 

 III.
 

 Rev. Civ. Code, article 2239, reads as follows: “Counter letters can have no effect against creditors or bona fide purchasers. * * *>>
 

 Rev. Civ. Code, article 2266, reads as follows: “All sales, contracts and judgments affecting immovable property, which shall not be so recorded [i. e. in the proper office], shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording. * * * ”
 

 The creditors meant in Rev. Civ. Code, article 2239, are, of course, the creditors of the party giving the counter letter, and in whose name the property stands.
 

 And a counter letter relating to immovable property is, of course, a contract affecting immovable property, since it is the acknowledgment of a natural obligation to restore the property to its true owner and a promise, express or implied, to do so.
 

 IV.
 

 • [3,4] Articles 2239 and 2266, Rev. _Civ. Code, must therefore be read together." Counter letters duly recorded affect all persons even creditors from the time of the recording. Counter letters not recorded are “utterly null and void” except between the parties thereto.
 

 In Slark v. Broom, 9 La. Ann. 69, this court held that a counter lejtter (unrecorded) acknowledging that the price of a ship had not been paid in full, though the bill of sale so recited, could not be opposed to other creditors of the purchaser, or avail to claim a vendor’s lien on the ship.
 

 In Tulane v. Levinson, 2 La. Ann. 787, this court held that the creditors of the vendor of an immovable could, by. recording their judgment against him, obtain a valid judicial mortgage against the property, and could validly seize, sell, and buy in the property, although knowing that the property had been sold to another who had failed to record his deed in the proper office.
 

 In Harang v. Plattsmier, 21 La. Ann. 426, this court overruled Swan v. Moore, 14 La. Ann. 833, wherein it had been held that actual knowledge'of an unrecorded title on the part of a creditor is equivalent to knowledge or notice resulting from the registry of such title; and, referring to Acts of 1855, p. 335 (now Rev. Civ. Code, art. 2266), held that: “The lawgiver, it would seem, was determined to settle the vexed question, whether knowledge was equivalent to registry in Louisiana, and he declared that it was not.” In First Nat. Bank v. Ft. Wayne Artificial Ice Co., 105 La. 133, 29 So. 379, 381, this court said: “We take it to be well settled under our law that, while a sale of immovable property may be good as between the parties by virtue, of their agreement, it is void as to third persons until registered.”
 

 
 *99
 
 In McDuffie v. Walker, 125 La. 152, 51 So. 100, this court held, that as to third persons, unrecorded acts affecting immovable property were so far nonexistent, that they might be deliberately ignored with entire good faith; for “It cannot, however, be said that a third person perpetrates a fraud merely by treating as void, as to himself, a contract which the law in terms declares ‘shall be utterly null and void, except between the parties thereto;’ ” (just as had actually been done, and approved of by the court, in Tulane v. Levinson, supra). “To hold such doctrine is necessarily to hold that one who knows a particular contract to be denounced by the law as utterly void is bound in spite of the law to respect it as valid and binding, a paradox to which a court of justice would be unwilling to commit itself as an interpretation of law.” And the court said further: “It is evident that whether a person acquires an interest in real' estate to the extent of its value or part of its value as a mortgagee or as a vendee the principle involved in the application of the law of registry is the same; and hence if it be true that one may acquire a valid first mortgage, though he know at the time that as between the mortgagor and another there already' exists an unrecorded mortgage upon the same property, it must also be true that one may acquire a valid title to such property, though he know that as between his vendor and another an unrecorded title has already been passed. The law mákes no distinction between mortgages and sales or between creditors and vendees or mortgagees; nor does it discriminate between those who acquire property with knowledge of unrecorded contracts and those who acquire without such knowledge. Its purpose is to establish and enforce as a matter of public policy upon the subject of the most important, property right with which it deals the rule that unrecorded contracts affecting immovable property ‘shall be utterly null and void, except between the parties thereto.’ No language could be plainer or more emphatic, and the courts have no more power to read into the rule established by it an exception, not contained in it, than they would have to read such an exception into- the rule that a verbal sale of immovable property shall not affect third persons.”
 

 Y.
 

 We have cited these few cases out of the very large number holding to the same effect, because these cases show that in this state registry is not a mere matter of notice alone, but a matter of public policy upon a “most important property right”; and that considerations of equity cannot prevail against it. “With us, those laws [of registry] are considered as founded on public policy, and the want of registry cannot be supplied. In the other States they are viewed differently, and notice in any
 
 form
 
 is held
 
 to
 
 be equivalent to registry.” Lockett v. Toby, 10 La. Ann. 713, 715.
 

 The only ease in which the contrary was held, to wit, that registry was only a matter of notice and not of public policy (Swan v. Moore, supra), was emphatically repudiated by legislative act in 1855 (Harang v. Plattsmier, supra), and by the uniform jurisprudence of this court ever since that time.
 

 Hence, all consideration of equity being banished, the creditors of a vendor who re
 
 *101
 
 cord judgments against him after he has sold the property but before the purchaser records his deed may not only ignore the purchaser with the unrecorded title, but acquire a judicial mortgage superior in rank to that of all judgment creditors of the purchaser without exception; since “there can be no actual owner of immovable property, so far as third persons are concerned, other than the owner of record; for, except as between the parties thereto, an unrecorded conveyance is ‘utterly null and void,’ and conveys no title.” Baker v. Atkins, 107 La. 490, 32 So. 69, 70.
 

 yi.
 

 The equity doctrine on which relator relies is that a judgment creditor acquires no lien against property standing in the name of his judgment debtqr, but in which that debtor has no beneficial interest, unless the judgment creditor can successfully plead an estoppel in pais against the actual owner of the property.
 

 But, as we have endeavored to show, registry is a matter of public policy in this state, against which considerations of equity cannot prevail; and “there can be no actual owner of immovable property, so far as third persons are concerned, other than the owner of record.”
 

 It is true there are a few cases apparently out of harmony with the otherwise uniform jurisprudence of this court.
 

 Peters v. Toby, 10 La. Ann. 408, was decided in 1855 on a state of facts existing, and in litigation which had begun, long before the legislative act of that year. It is not authority under that legislation.
 

 The other cases (Broussard v. Le Blanc, 44 La. 880,11 So. 460; Succession of Manson, 51 La. Ann. 130, 25 So. 639; Douglass v. Douglass, 51 La. Ann. 1455, 26 So. 546) were examined and distinguished in Baker v. Atkins, 107 La.' 490, 32 So. 69, 72, in which it was said: “There is, no doubt, some language in these opinions which sustains the views which have been here considered [substantially those herein urged by relator], but we are of opinion that its application should be confined to the cases in which it was used, it being much safer at times to reason from general propositions to particular cases than the reverse.”
 

 And finally we can see no distinction in principle, such as relator seeks to draw, between a creditor of one who never at any timo acquired any beneficial interest in the property and the creditor of one who has parted with all interest he ever had therein. The equities, if they could he considered at all, are no stronger against the one than against the other.
 

 Of course we are not here pronouncing against any other legal or equitable claims which this relator may have against the property under the facts disclosed by this record. We are here deciding only that he is not entitled to the relief which he now asks.
 

 Decree.
 

 For the reasons assigned, the judgment appealed from is affirmed.