490          SUPREME COURT OF LOUISIANA,

Baker vs. Atkins & Wideman et als.; Pratt vs. Same; Matthews et al. vs. Sheriff et als.

No. 14,218.

J. L. BAKER VS. ATKINS & WIDEMAN ET ALS.; JAMES A. PRATT VS. ATKINS
    & WIDEMAN ET ALS.; T. S. MATTHEWS ET AL. VS. W. R. PULLIN,
    SHERIFF, ET ALS.

### SYLLABUS.

Where "A" is the owner of real estate, by undisputed title, and sells the same
    to "B," who fails to record his title, the judgment creditors of "A" can
    acquire judicial mortgages on such property by recording their judgments
    after the date of such sale and before its registry.

And, in such case, the judicial mortgages recorded against "A," prior to the
    registry of the sale, prime all such mortgages recorded against "B," whether
    the latter be recorded before or after the former.

CERTIFIED from the court of appeal, first circuit, by the judges
    thereof applying for instructions.

The opinion of the court was delivered by

MONROE, J. The judges of the court of appeal of the first circuit
certify the following questions: ·

"1. Where A is the owner of real estate, by undisputed title, and
sells the same to B, who fails to record his title, can the judgment
creditor of A acquire a judicial mortgage on said property by duly
recording his judgment after the date of said sale, but before the same
is recorded?"

"2. If so, what is the rank of said judicial mortgage as to a judicial
mortgage against B, resulting from the registry of a judgment against
him after the date of the unrecorded sale, but before the registry of the
other judgments?"

It appears from the statement of the learned judges, that, in 1889,
W. H. Hope sold certain real estate to T. S. Matthews, and that the
parties failed to record the act of sale. Atkins & Wideman obtained
judgment against Matthews which they recorded in December, 1891.
Pratt obtained several judgments against Hope, which he recorded in
March, 1893. And Baker obtained judgment against Hope which he
recorded in July, 1893. Sometime afterwards, the act of sale from
Hope to Matthews was registered, and, thereupon, or thereafter, Atkins
& Wideman seized the property, as belonging to Matthews, and had it

sold under execution, and Baker and Pratt came in by way of third opposition and claimed preference on the proceeds, as creditors of Hope, with judicial mortgages on the property, antedating the registry of the conveyance to Matthews.

The determination of the questions certified depends upon the construction to be placed upon the following Articles of the Civil Code:

"Art. 2440. All sales of immovable property shall be made by authentic act or under private signature. Except as provided in article 2275, every verbal sale of immovables shall be null, as well for third persons as for the contracting parties themselves, and the testimonial proof of it shall not be admitted."

"Art. 2275. Every transfer of immovable property must be in writing; but if a verbal sale or other disposition of such property be made, it shall be good against the vendor, as well as against the vendee, who confesses it when interrogated under oath, provided actual delivery has been made of the property thus sold."

"Art. 2264. No notarial act concerning immovable property shall have any effect against third persons until the same shall have been deposited in the office of the parish recorder, or register of conveyances, of the parish where such immovable property is situated."

"Art. 2254. It shall be the duty of the recorder to indorse on the back of each act deposited with him the time it was received by him and to record the same without delay in the order in which they were received; and such acts shall have effect against third persons only from the date of their being deposited in the office of the parish recorder."

"Art. 2266. All sales, contracts and judgments affecting immovable property which shall not be so recorded shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording. The recording shall have effect from the time when the act is deposited in the proper office and indorsed by the proper officer."

"Art. 2242. An act under private signature, acknowledged by the party against whom it is adduced, or legally held to be acknowledged, has, between those who have subscribed it, and their heirs and assigns, the same credit as an authentic act."

"Art. 2246. Sales or exchanges of immovable property by instruments made under private signature are valid against *bona fide* purchasers and creditors only from the day on which they are registered in the manner required by law."

"Art. 2253. The record of an act under private signature, purporting to be a sale or exchange of real property shall not have effect against creditors or *bona fide* purchasers, unless, previous to its being recorded, it was acknowledged by the party or proved by the oath of one of the subscribing witnesses, and the certificate of such acknowledgment be signed by the parish recorder, a notary, or a justice of the peace, and recorded with the instrument."

"Art. 3322 (as amended by act No. 78 of 1900). The judicial mortgage takes effect from the day the judgment is recorded in the manner hereinafter directed."

"Art. 3328. The judicial mortgage may be enforced against all the immovables which the debtor actually owns or may subsequently acquire."

The foregoing provisions of law, in so far as they relate to sales of immovable property, establish and emphasize the rules: (1) That such sales shall be without effect unless evidenced by writing, with the single exception, that a verbal sale is to be held good as against the vendor or vendee who confesses it when interrogated on oath, provided, actual delivery has been made of the property. (2) That all such sales shall be "utterly null and void, except between the parties thereto," unless, and until, duly recorded in the proper office, and to this rule there is no exception. Turning, however, to another part of the Code, we find, under the title "Of Mortgages," the two articles Nos. 3322 and 3328, which have been quoted, and, upon the basis of which it is thought, by one of the learned judges whose questions we are endeavoring to answer, that a judicial mortgage against the holder of an unregistered title takes effect when recorded, not only as between the mortgagee and such holder, but as priming all judicial mortgages recorded against the owner of record subsequently to the date of the unregistered conveyance, from which date and for which purpose it is assumed that the unregistered vendee "actually owns" the property.

It is admitted that "so long as a sale is unregistered an innocent third person may acquire a valid mortgage, or title by purchase, either from the apparent owner, himself, or by seizure and judicial sale made at the instance of the creditor of the apparent owner. 'But,' it is said, 'in all cases where the judgment creditor's right has been sanctioned to seize and sell the property of his debtor, as against the real owner under an unrecorded title, the same was attached or seized,

before the recordation of the title to the purchaser. In instances of this character, it is the fact of the previous seizure that confers the right, as against the apparent owner; and the question of the mortgage or no mortgage has no bearing in determining the rights of the respective parties under such conditions. It is the action of the creditor, based on the faith of the records, that confers a superior right in favor of the creditor over that of the real owner under an unrecorded title. But when the creditor undertakes to exercise his claim to a judicial mortgage an entirely different question is presented. In the latter case, under the plain provisions of the civil code, the creditor's right of mortgage is limited and restricted to the property actually owned by the debtor at the time of the registry of the judgment."

It would follow from the view thus presented that for the purposes of all judicial mortgages, whether recorded against the owner of record, or against the holder of the unregistered title, the latter must be regarded as the *actual* owner of the property, and, *quoad* that property, as the only person affected. The answer to this, we think, is to be found in the declaration of the law, that no sales of immovable property shall "have any effect against third persons, until the same shall have been deposited," etc.; that such sales "shall have effect against third persons only from the date of their being deposited," etc.; that "all sales of immovable property which shall not be recorded shall be utterly null and void except between the parties thereto," etc. Giving effect to these provisions, there can be no actual owner of immovable property, so far as third persons are concerned, other than the owner of record; for, except as between the parties thereto, an unrecorded conveyance is "utterly null and void," and conveys no title.

As between the parties, however, the unrecorded conveyance makes the grantee the actual owner of the property; and as between the grantee and his creditors, the latter may enforce their judgments either by executing them or by recording them as judicial mortgages, and it is in that sense, and to that extent, as we understand it, that article 3328 is intended to have effect. If, upon the other hand, we attempt to give that article the effect attributed to it, we at once become involved in complications and contradictions from which there is no extrication. And, in this connection, it may be remarked, that the inclination to acquire absolute dominion over some part of the earth's surface and to hold on to the part so acquired seems common to all mankind. And,

494 . SUPREME COURT OF LOUISIANA,

Baker vs. Atkins & Wideman et als.; Pratt vs. Same; Matthews et al. vs. Sheriff et als

being a species of property which can neither be removed nor concealed, it constitutes a visible asset inducing confidence in the financial responsibility of the owner and affording to his creditors a convenient source from which to obtain satisfaction of their claims. For these reasons, and for others that might be mentioned, it is obviously of the utmost importance to the peace and welfare of society that all questions as to the manner in which title to such property is acquired and devested, and as to the moment at which one person becomes, and another ceases to be, the owner should be governed by definite and fixed laws. And, hence, we take it, the explicit and reiterated provisions of our Code. But, if it be held that, *quoad* the judicial mortgagee, the actual owner of the real estate is, or may be, the holder of the unregistered title, whilst as to all other third persons the actual owner is the owner of record, we introduce into our system of law an element of uncertainty which appears to us to be destructive of the purpose to be accomplished. Thus, if it be true that the owner of record, notwithstanding the fact that he has already made a sale, which has not been registered, may sell or mortgage his property; and if it be true that, notwithstanding such unregistered sale, or conventional mortgage, the property may be attached, or seized under execution, or under executory process, at the instance of his creditor, what reason can there be for denying to such creditor the right to record and make effective his judgment as a judicial mortgage? The law under which he acts leaves it optional with him to issue execution, or not, as he pleases; to record his judgment or not as he pleases. Why, then, should it be said that his debtor is the actual owner of certain real property for the purposes of the execution, but that, for the purposes of the mortgage resulting from the registry of the judgment, the owner is unknown and is at liberty to disclose his identity at his convenience? Another consideration which affects the question is, that, so long as the title to real estate stands in a man's name it may give him credit which he might not otherwise enjoy, and i' would be impossible to say, in any given case, and in the absence of evidence on the subject, how far a creditor, whose debt is contracted during such period is influenced in his dealing by the credit which his debtor derives from that source. Our jurisprudence upon the subject is reasonably clear, though there are perhaps one or two decisions which might admit of, or require, a somewhat nice differentiation.

In Logan vs. Hebert, 30 Ann. 727, it was held that an unrecorded deed transfers the property to the purchaser as against all the world

TERM OF 1901-1902.    495

Baker vs Atkins & Wideman et als.; Pratt vs. Same; Matthews et al. vs. Sheriff at als.

except creditors of the vendor and *bona fide* purchasers from him, without notice, and that the registry of a judgment will operate as a judicial mortgage on all the immovables belonging to the debtor, and situated in the parish where the registry is effected, whether the title to such immovables is recorded or not, and will be good against everybody that such debtor's title is good against; which is equivalent to saying that such mortgage was *not* good against creditors of the vendor of the property.

In Gallaugher vs. Congregation, 35th Ann. 829, it was held that, as to the owner by unregistered title a recorded judgment operates as a judicial mortgage; but the court said: "Where the act is unrecorded, those creditors" (referring to the creditors of the vendor) "are not presumed to know of its existence, and if they know of it they are not bound to respect the transfer. They are authorized to ignore it and to proceed directly against the property as though the transfer had never taken place and the property unquestionably belonged to their debtor."

The cases of Broussard vs. Sheriff, 44 Ann. 880; Succession of Manson, 51 Ann. 130; and Douglas vs. Douglas, *ib.* 1455, presented peculiar features of their own.

In Broussard vs. Sheriff, the plaintiff, a married woman, sued for the recovery of certain property which had been seized by the creditors of one Nunez, her position being that the alleged title, upon the faith of which the seizure had been made; was merely a pignorative contract, or a fraudulent simulation, entered into by her for the purpose of securing a debt due by her husband. The seizing creditors affirmed that the transaction was a sale, and also alleged that they had acquired judicial mortgages, which, in any event, they were entitled to enforce. It was held that, under the pleadings, the mortgage rights of the defendant could not be determined; that there had been no sale of the property; and that the alleged vendee had never taken possession; and, whilst it was intimated that there might be some difference between the rights of a judicial, and of a conventional, mortgage, the matter was merely referred to, *en passant,* and the intimation was not made the basis of the judgment.

In the Succession of Manson, the facts were, that one of the banks in New Orleans foreclosed a mortgage for $5000, and the property was adjudicated, upon the bid of its counsel, and merely as a matter of convenience, to its cashier, who was not informed of it until afterwards, when, upon the same day he executed an instrument in the form of a

·counter-letter, declaring that he had no interest in the property. It was made known later, however, that there had been previously recorded against him a minor's mortgage for a large amount, and the purpose of the suit was to free the property so adjudicated therefrom. It was held that, under the circumstances, the minor's mortgage ought not to be held operative against the property.

The case of Douglas vs. Douglas was not unlike that of Broussard vs. Sheriff, the decision having for its basis an utterly void transaction whereby the property of a married woman was made to appear the property of her husband, and the question to be decided being, whether the creditors of the husband's heir, who were not shown to have acted upon the faith of his supposed ownership, should be allowed to appropriate it to the payment of their claims. There is no doubt some language in these opinions which sustain the views which have been here considered, but we are of opinion that its application should be confined to the cases in which it was used, it being much safer, at times, to reason from general propositions to particular cases, than the reverse.

Our answer to the first question, then, is "Yes."

And we think that the law and the reasoning which lead to that conclusion require that we should answer the second question by saying that judicial mortgages recorded against the owner of record prior to the registry by him of the sale of the property prime all such mortgages recorded against the vendee, whether the latter be recorded before or after the former.

Nicholls, C. J., dissents.

Breaux, J., dissenting, handed down a separate opinion.