583 So.2d 879 (1991)
CRAFTSMEN HOMES, INC., U.S. Life Title Insurance Company of Dallas, and Neil Alford
v.
HOLLYWOOD DOOR COMPANY, INC. and Lakeside Insulators, Inc.
No. CA 90 0897.
Court of Appeal of Louisiana, First Circuit.
June 27, 1991.
*880 Joseph Russo, Jefferson, for defendant-appellant Hollywood Door Co., Inc.
Charles F. Gay, Jr., New Orleans, La., for defendant-appellant Neil Alford.
Denise D. Lindsey, Slidell, for plaintiff-appellee Craftsmen Homes, Inc.
Neville M. Landry, New Orleans, La., for plaintiff-appellee U.S. Life Title Ins. Co.
Before LOTTINGER, SHORTESS and CARTER, JJ.
LOTTINGER, Judge.
This is an appeal by Hollywood Door Company, Inc. (Hollywood), one[1] of the defendants in this declaratory judgment action, from the trial court's judgment granting the declaratory relief requested by the plaintiffs, Craftsmen Homes, Inc. (Craftsmen), U.S. Life Title Insurance Company[2], and Neil Alford. Hollywood claims to have a judicial mortgage on a piece of property owned by Craftsmen, pursuant to a judgment against Reine Homes, Inc. (Reine).[3] This judgment was recorded at a time when Reine was the owner of public record, but not the owner in fact of the property.
The sole issue presented in this appeal is whether a judicial mortgage attaches to, or creates an encumbrance on, a certain piece of real property due to the fact that the judgment debtor is listed in the public records as the owner of that property at the time that the judgment was recorded, notwithstanding that the judgment debtor is not the true owner of the property.

I.
The real property which Hollywood claims to have a judicial mortgage on is described as lot 88, Quail Ridge Subdivision, Phase VI, Slidell, La. (lot 88). Prior to August 20, 1982, lot 88 was owned by Clover Construction Company, Inc. (Clover). On that date, Clover entered into a cash sale, whereby lot 88, along with several other lots in the same subdivision, was sold to Reine. This cash sale was recorded in the conveyance records of St. Tammany Parish on August 24, 1982.
When Reine was ready to develop lot 88 it discovered that the roadway fronting it was incomplete. Since Reine could not further develop the property without a completed roadway, Clover agreed to let Reine exchange lot 88 for lot 30 of the same subdivision, which was also owned by Clover, and which abutted a completed roadway. *881 An act of exchange was entered into by Reine and Clover on October 18, 1982, transferring lot 88 back to Clover and lot 30 to Reine in exchange. This act of exchange was recorded in the conveyance records of St. Tammany Parish on October 26, 1982.
Subsequent to this exchange, it was discovered that the plat numbers used to describe the subdivision in the original cash sale were wrong.[4] To remedy this error in the plat numbers used in the cash sale, Clover executed a quit claim deed with the correct plat numbers on February 10, 1983, deeding its interest in all of the property sold in the original cash sale, including lot 88, to Reine. This quit claim deed was recorded in the conveyance records of St. Tammany Parish on February 14, 1983.
Lot 88 was included in the quit claim deed because the attorney who prepared it, Neil Alford, was unaware of the exchange by Reine of lot 88 for lot 30 subsequent to the cash sale.[5] Clover and Reine only intended to correct the plat numbers in the original cash sale when they executed the quit claim deed, it was not their intention to transfer lot 88 back to Reine. In order to give effect to the intention of the parties, lot 30 should have been included in the quit claim deed instead of lot 88. Nevertheless, this was not done and after the recordation of the quit claim deed, it appeared in the public records that Clover had deeded lot 88 back to Reine.
The judgment at issue, in favor of Hollywood and against Reine, was recorded in the public records of St. Tammany Parish on April 18, 1984. It is Hollywood's contention that the recordation of this judgment at a time when Reine was the owner of record of lot 88 operates as a judicial mortgage on lot 88. Hollywood relies on the public records doctrine as support for this proposition.
An act of correction was executed by Clover and Reine on February 8, 1985, whereby lot 88 was removed from the description of property in the quit claim deed as being erroneously included therein. Lot 88 was then sold by Clover to Craftsmen on February 27, 1985. The act of correction to the quit claim deed and the cash sale of lot 88 from Clover to Craftsmen were both recorded in the conveyance records of St. Tammany Parish on March 4, 1985.
This declaratory judgment action was then brought by Craftsmen, U.S. Life, and Neil Alford to obtain relief from Hollywood's claim to a judicial mortgage on lot 88. The trial court found the facts to be as stated above and rendered judgment in favor of the plaintiffs, declaring that lot 88 was owned by Clover when the judgment against Reine was recorded, and therefore it did not attach to, encumber, or create a judicial mortgage on lot 88. Hollywood appeals, asserting that the trial court erred as a matter of law in so holding.

II.
Hollywood does not assert that the trial court's factual findings[6] are erroneous, only that it erred as a matter of law in holding that the judgment against Reine does not act as a judicial mortgage on lot 88 since it was recorded at a time when Reine was the owner of record. Therefore, the only issue before us is whether the judicial mortgage created by the recordation of the judgment in favor of Hollywood and against Reine, attached to or encumbered lot 88, given the facts as outlined above.
*882 The law relative to judicial mortgages is set out in La.Civ.Code arts. 3321-3328. La. Civ.Code art. 3328 provides that "[t]he judicial mortgage may be enforced against all the immovables which the debtor actually owns or may subsequently acquire." According to this article, a judicial mortgage only attaches to immovable property which the judgment debtor "actually owns or may subsequently acquire."
Since the trial court found that Reine did not actually own lot 88 at the time the judgment at issue was recorded, and has not subsequently acquired it, a reading of La.Civ.Code art. 3328 would seem to indicate that the judicial mortgage created by the recordation of Hollywood's judgment did not attach to or encumber lot 88 in any way.
However, the public records doctrine, as embodied in La.Civ.Code art. 1839, La.R.S. 9:2721, La.R.S. 9:2756 and the jurisprudence interpreting these provisions, requires a different result. La.Civ.Code art. 1839 provides in part[7] that "[a] transfer of immovable property must be made by authentic act or by act under private signature.... An instrument involving immovable property shall have effect against third persons only from the time it is filed for registry in the parish where the property is located."
La.R.S. 9:2721 provides:
No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated; and neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties.
La.R.S. 9:2756 provides:[8]
All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording.
The recording shall have effect from the time when the act is deposited in the proper office, and indorsed by the proper officer.
The purpose of the public records doctrine is to insure the stability of the titles to land. Camel v. Waller, 526 So.2d 1086, 1089 (La.1988); Blevins v. Manufacturers Record Publishing Company, 235 La. 708, 105 So.2d 392, 414 (1958) (Tate, J. on rehearing). It has been held that there can be no actual owner of immovable property, insofar as third persons are concerned, other than the owner of record. Robin v. Harris Realty Co., 178 La. 946, 152 So. 573, 574 (1934); State v. Recorder of Mortgages, 175 La. 94, 143 So. 15, 17 (1932); Baker v. Atkins, 107 La. 490, 32 So. 69, 70 (1902).
A third party can acquire a valid interest in, or even ownership of, an immovable from the record owner even though the record owner may not be the true owner, since the public records doctrine holds that any interest in immovable property is null as to third parties absent recordation. Camel, 526 So.2d at 1090; McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909). Similarly, a judgment creditor who records his judgment at a time when the judgment debtor is the record owner of a certain immovable, acquires a judicial mortgage on that immovable even if the judgment debtor has previously transferred the immovable to another. This is so because the unrecorded interest of the other *883 can have no effect on third persons (the judgment creditor). Robin, 152 So. 573; State v. Recorder of Mortgages, 143 So. 15; Baker, 32 So. 69.
Finally, any reformation or correction of an error in a recorded document affecting immovable property has no effect as to third persons until it is recorded. Morrison v. D & L Partnership, 499 So.2d 988 (La.App. 3rd Cir.1986); Haas v. Fontenot, 132 La. 812, 61 So. 831, 833 (1913). Therefore, any such reformation or correction is ineffective as to third persons who have acquired a valid interest in the immovable in the interim.
Hollywood is a third party to the act of correction which corrected the erroneous inclusion of lot 88 in the quit claim deed, as it was not a party thereto. Since the act of correction was recorded after Hollywood's judgment against Reine was recorded, and Reine was the record owner of lot 88 at that time, Hollywood acquired a valid judicial mortgage on lot 88 to the extent of their judgment against Reine. The act of correction recorded subsequent to the creation of Hollywood's judicial mortgage, a real right in lot 88 in favor of Hollywood, cannot operate to extinguish that mortgage.
The foregoing can be seen more clearly when viewed from Craftsmen's perspective. Up until the day that Craftsmen purchased lot 88 from Clover, Reine was the record owner of it. The act of correction that clarified the quit claim deed and made it appear in the public records that Clover was the owner of the lot was recorded on the same day that the cash sale from Clover to Craftsmen was recorded. Craftsmen could have ascertained from a review of the public records that Reine was a predecessor in title to Clover of lot 88, and that Hollywood's judgment was recorded at a time when Reine was the record owner of the lot. Therefore, Craftsmen should have known that it was purchasing lot 88 subject to a judicial mortgage in favor of Hollywood.
Therefore, for the above and foregoing reasons, it is hereby ORDERED, ADJUDGED AND DECREED that the judgment of the trial court declaring that the judicial mortgage in favor of Hollywood does not attach to or encumber lot 88, Quail Ridge Subdivision, Phase VI, Slidell, La., is reversed, and plaintiffs' suit is dismissed with prejudice. The costs of this appeal are assessed to the plaintiffs-appellees.
REVERSED and RENDERED.
NOTES
[1] The other defendant, Lakeside Insulators, Inc., has also recorded judgments against Reine and asserted that they acted to create a judicial mortgage on lot 88. However, this defendant did not answer the petition. Consequently, a default judgment was entered and confirmed against it and has now become final.
[2] Counsel for U.S. Life Title Insurance Company, Inc. withdrew prior to the start of the trial in this matter because his client was in the process of being liquidated by the Texas State Commissioner of Insurance.
[3] Reine Homes, Inc. subsequently changed its name to Victorian Homes, Inc. It declared bankruptcy prior to the institution of this suit and is no longer in business. We will continue to refer to this former corporation as Reine Homes, Inc., or Reine.
[4] The cash sale from Clover to Reine described Quail Ridge Subdivision, phase 6, as being set out in plat map no. 621-A and 621-B on file with the Clerk of Court for St. Tammany Parish. In reality this subdivision is set out in plat map nos. 629-A and 629-B. The Act of Exchange between Clover and Reine involving the exchange of lot 88 for lot 30 also used the incorrect plat map numbers.
[5] Both the cash sale and the exchange were drafted by a different attorney.
[6] The factual findings of the trial court, that the inclusion of lot 88 in the quit claim deed was due to an error, that the parties never intended to transfer lot 88 back to Reine, and that Clover was the true owner of lot 88 at the time the judgment at issue was recorded, are fully supported by the record and are not manifestly erroneous.
[7] La.Civ.Code art. 1839 became effective January 1, 1985. It did not change the law but restates the principles of former articles 2275, 2264, 2265, and 2266. La.Civ.Code art. 1839 comment (a). This article embodies the recordation scheme contained in La.R.S. 9:2721 et seq. La. Civ.Code art. 1839 comment (b).
[8] Former La.Civ.Code art. 2266 was redesignated as La.R.S. 9:2756 by 1984 La.Acts, No. 331, § 5, effective Jan. 1, 1985.