MURRAY, J.
This is a declaratory judgment action. One of the defendants,[1] Ocean National, L.L.C., appeals the trial court’s judgment denying its exceptions of improper use of summary proceedings and no cause of action and granting the declaratory relief the plaintiff, Earnest James, requested. For the reasons that follow, we reverse.
FACTUAL AND PROCEDURAL BACKGROUND
On July 18, 1995, Mr. James entered into a bond for deed contract with Bonita Winfrey Walker and John L. Walker, Jr., to purchase immovable property located at 5720 Foxcroft Drive in the City of New Orleans for a cash price of $182,429.04 (hereinafter the “Agreement to Purchase”).[2] The Agreement to Purchase contains a special mortgage. The terms of that special mortgage are as follows:
In order to secure the full and faithful performance of the foregoing obligation of Seller to deliver title to the above described property, 12Seller does by these presents further specifically mortgage and hypothecate the hereinabove property up to the maximum amount of three times the Price stated above [$182,429.04], unto and in favor of Purchaser and Purchaser’s successors and assigns in accordance with the provisions of La. Civil Code Articles 3293, 3294 and 3298.
This special mortgage in favor of Purchaser and Purchaser’s successors and assigns, now herein granted by Seller, is *1098 separate, distinct and in addition to the existing mortgage described below, and is in addition to Purchaser’s right to demand specific performance of Seller’s obligation to deliver title. Upon cancellation of this Agreement, or upon the recordation of the Act of Sale, this special mortgage shall terminate and be null and void, and shall be extinguished by confusion under La. Civil Code Article 1903.
The Agreement to Purchase also contains a declaration by the Seller (the Walkers) that the Property was encumbered by two mortgages; to-wit: (i) a first mortgage in favor of Citicorp, having a principal balance of $152,429.04; and (ii) a second mortgage in favor of Liberty Bank and Trust, having a principal balance of $30,000.00. In the Agreement to Purchase, the Seller declares that:
[T]he property is not subject to any other liens or encumbrances whatsoever and has not been alienated or sold by Seller, and that Seller will not, prior to the time that title is to be transferred to the said Purchaser, execute or permit any mortgages, liens or encumbrances to be placed on the said property and will at the time that the title is transferred, clear any inscriptions appearing on the Mortgage and Conveyance Certificates.
On the same day they executed the Agreement to Purchase, Mr. James and the Walkers additionally entered into an Act of Cash Sale and an Escrow Agreement. The Escrow Agreement recites that the Act of Cash Sale was to be placed in escrow and that title to the Property had not been conveyed and would not be conveyed until the purchaser (Mr. James) complied with the terms of the Escrow Agreement. The principal term of the Escrow Agreement is the obligation to pay the principal balance of the two mortgages the purchaser (Mr. James) assumed, which totaled $182,429.04.
[oOn July 25, 1995, the Agreement to Purchase was recorded in the mortgage records for the Parish of Orleans. The Escrow Agreement was never recorded.
In August 2004, Mr. James began preparations to sell the Property to a third party. In researching the mortgage records, the closing attorney handling the transaction discovered that the Property was encumbered by two judicial mortgages. Particularly, the mortgage records reflected that two of Mrs. Walker’s judgment creditors had recorded the judgments they had obtained against her.[3] First, on January 19, 2001, Ocean National recorded a judgment in the principal amount of $4,993.66. Second, on June 21, 2001, Capital One recorded a judgment in the principal amount of $1,439.39. Although the closing attorney requested that the judgment creditors cancel their judicial mortgages insofar as the Property is concerned, they both refused
On August 11, 2004, Mr. James filed a Petition for Declaratory Judgment and Rule to Show Cause against Ocean National and Capital One. Mr. James prayed for a judgment declaring that the judicial mortgages recorded subsequent to his Agreement to Purchase be declared null and void as to him pursuant to La. R.S. 9:2756 and that a partial release issue insofar as the judicial mortgages pertain to the Property. In response, Ocean National filed exceptions of improper use of summary proceedings and no cause of action, *1099 and Capital Bank filed an opposition memorandum.
At the October 8, 2004 hearing, introduced were copies of two acts of sale of the Property that were recorded after this action was filed; to-wit: (i) the Act of Cash Sale transferring title from the Walkers to Mr. James for $182,429.04, which |4was dated July 18, 1995, but recorded October 18, 2004; and’ (ii) the Act of Sale transferring title from Mr. James to a third party for $340,000.00, which was dated October 16, 2004 and recorded October 17, 2004.
At the close of that hearing, the trial court overruled Ocean National’s exceptions of improper use of summary proceedings and no cause of action and granted Mr. James’ request for declaratory relief, finding as follows:
The two subsequent judgments issued in favor of defendant, Ocean National, L.L.C. and Capital One Bank, which were unrecorded at the time Mr. James acquired his interest in the subject property duly executed and recorded Agreement to Purchase and Bond for Deed, has no effect upon Mr. James’ rights to obtain a clear title. Pursuant to Louisiana Civil Code Articles 3293, 3294, and 3298 and the Revised Statute 9:2756, the court concludes that plaintiff, as a good faith third party purchaser is entitled to a partial release of the defendants’ [sic] judgment vis-a-vis the subject property, which was previously mortgaged by the seller to secure his future obligation to deliver clear title to the plaintiff. The subsequently arising judgment creditors will not be allowed to prejudice the plaintiffs right to free and clear title of the subject property.
Also on October 8, 2004, the trial court rendered a judgment consistent with its oral reasons. The judgment specifically declared that the judgments in favor of Ocean National and Capital One against Mrs. Walker null and void as to Mr. James and ordered that such judgments be partially cancelled but only insofar the judgments relate to the Property. From that judgment, Ocean National appeals.
DISCUSSION
On appeal, Ocean National raises three assignments of error; to-wit:
1. The trial court erred in overruling its exception of improper use of summary proceedings.
2. The trial court erred in overruling its exception of no cause of action.
3. The trial court erred in granting Mr. James’ petition and declaring that the judgments did not attach to the Property and ordering the Recorder of Mortgages to cancel the judicial mortgages insofar as they attached to the Property.
|sWe separately address each of these arguments.

(i) Improper Use of Summary Proceedings

The use of summary proceedings is regulated by La. C.C.P. art. 2592, which list specific proceedings that may be brought by summary process. Ocean National stresses that a declaratory judgment is not included in that list and that a declaratory judgment action is an ordinary action, citing Chauvet v. City of Westwego, 599 So.2d 294 (La.1992), and Couvillion v. James Pest Control, Inc., 1998-2382 (La.App. 4 Cir. 3/3/99), 729 So.2d 172. Mr. James, on the other hand, contends that this action properly was brought under La. C.C.P. art. 2592(3), which authorizes the use of summary proceedings for matters involving “[a]n issue which may be raised properly by an exception, contradictory motion, or rule to show cause.” La. C.C.P. art. 2592(3).
*1100 The provision contained in Article 2592(3) was included on the list “[d]ue to the very large number of code and statutory provisions permitting the use of summary proceedings and prescribing the rule to show cause as the initial pleading.” La. C.C.P. art. 2592, Official Revision Comment (d). Stated otherwise, this provision was included because “the redactors of the Code did not want to cast doubt on the continuing validity of the existing revised statutes which provided that a person can obtain final relief on the merits by contradictory motion or rule to show cause.” 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 5.3 (1999)(citing La. C.C.P. art. 2592, Official Revision Comment (d)).
Mr. James’ reliance on La. C.C.P. art. 2592(3) is misplaced. An initial pleading seeking a declaratory judgment does not fall within the ambit of that provision. A declaratory judgment must be brought as an ordinary proceeding. See Bergen Brunswig Drug Co. v. Poulin, 93-1945 (La.App. 1 Cir. 6/21/94), 639 So.2d 453, 456 (holding a declaratory judgment is an ordinary, not a summary proceeding). Although we find the trial court erred in overruling the exception of improper use of summary proceedings, we find it inappropriate to remand given the present posture of this case.

(ii) No cause of action

We review a trial court’s decision on an exception of no cause of action de novo “because the exception raises a question of law and the lower court’s decision is based only on the sufficiency of the petition.” City of New Orleans v. Board of Comm’rs of Orleans Levee Dist., 93-0690, p. 28 (La.7/5/94), 640 So.2d 237, 253. No evidence can be introduced to support or to controvert an exception of no cause of action. La. C.C.P. art. 931. Rather, we must accept as true the well pleaded factual allegations set forth in the petition. Based thereon, our job is to determine “whether, on the face of the petition, the plaintiff is legally entitled to the relief sought.” Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1235 (La.1993). “An exception of no cause of action is likely to be granted only in the unusual case in which the plaintiff includes allegations that show on the face of the petition that there is some insurmountable bar to relief.” City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170, p. 10 (La.3/2/99), 739 So.2d 748, 756. This is such a case.
A judicial mortgage is created by filing a judgment with the recorder of mortgages and burdens all the debtor’s property that is susceptible to mortgage. La. C.C. arts. 3300 and 3302. Ocean National contends that the code does not exempt property subject to a recorded agreement to purchase from the scope of the |7debtor’s property to which a judicial mortgage attaches. Ocean National further contends that recognizing such an exception would allow a judgment debtor to place his property beyond the reach of his creditors by the mere expedient of recording an agreement to sell at an unspecified future date. Ocean National’s contentions are supported by the jurisprudence.
In Craftsmen Homes, Inc. v. Hollywood Door Co., 583 So.2d 879 (La.App. 1st Cir.1991), the defendant claimed to have a judicial mortgage on a piece of immovable property. The defendant’s judicial mortgage was the result of it recording its judgment when its judgment debtor, Reine, was the owner of public record, but not the actual owner of the property. Finding the trial court erred in finding the judicial mortgage did not attach to the property, the court of appeal reasoned that *1101 “a judgment creditor who records his judgment at a time when the judgment debtor is the record owner of a certain immovable, acquires a judicial mortgage on that immovable even if the judgment debtor has previously transferred the immovable to another.” Craftsmen Homes, 583 So.2d at 882. Continuing, the court noted that “this is so because the unrecorded interest of the other can have no effect on third persons (the judgment creditor).” Id. at 882-83 (citing Baker v. Atkins, 107 La. 490, 494, 32 So. 69, 70 (1902)).
In Baker, the Louisiana Supreme Court affirmatively answered the following certified question from one of the state appellate courts:
Where A. is the owner of real estate by undisputed title, and sells the same to B., who fails to record his title, can the judgment creditor of A. acquire a judicial mortgage on said property by duly recording his judgment after the date of said sale, but before the same is recorded?
|sThe Supreme Court reasoned that “there can be no actual owner of immovable property, so far as third persons are concerned, other than the owner of record.” Baker, 107 La. at 494, 32 So. at 70.
In this case, on January 19, 2001, when Ocean National recorded its judgment against Mrs. Walker in the Orleans Parish mortgage records, the Walkers were both the actual and record owners of the Property. Mr. James acknowledges this fact in his petition, filed on August 11, 2004, by alleging that he had not yet taken title to the Property. The petition thus establishes that Ocean National’s judicial mortgage attached to the Property.
A judicial mortgage, like any other type mortgage, can only be extinguished by one of the methods enumerated in La. C.C. art. 3319. These include extinction of the thing mortgaged, confusion (the mortgagee acquiring ownership of the thing mortgaged), consent of the mortgagee, and “discharge through execution or other judicial proceeding in accordance with the law.” La. C.C. art. 3319(4). The petition does not allege that any of these methods were employed.[4] We thus find the trial court erred in overruling Ocean National’s exception of no cause of action.
In the interest of judicial economy, we address Ocean National’s final assignment of error regarding the declaratory relief granted.
(iii) Declaratory Relief
Ocean National’s final assignment of error is that the trial court erred in declaring its judicial mortgage did not attach to the Property and ordering it canceled insofar as it attached to the Property. In support, Ocean National argues ]flthat the public records doctrine protects it, not Mr. James, because the Cash Sale of the Property from the Walkers to Mr. James, although executed on July 18, 1995, was not recorded until October 18, 2004. A significant effect of the recordation of the cash sale, as Ocean National emphasizes, is that it resulted in the cancellation of Mr. James’ special mortgage by confusion. Indeed, the special mortgage, by its own terms, states that “upon the recordation of the Act of Sale, this special mortgage shall terminate and be null and void, and shall be extinguished by confusion under La. Civil Code Article 1903.” We thus find the *1102 trial court erred in rendering judgment in Mr. James’ favor.
Mr. James counters that we should view the issue presented based on his status as of the time he filed this action. However, as discussed above, even if we viewed his claims based on the allegations of the petition, we would find the trial court erred in granting the declaratory relief he requested.
Mr. James next argues that since the Walkers had no equity in the Property and thus were not paid any money, it would be inequitable to allow Mrs. Walkers’ creditors to prejudice his rights as a good faith third party purchaser. He stresses the fact that pursuant to the Escrow Agreement he has made multiple payments on the Property, including the commissions and closing costs (which totaled $10,639.52) and $218,946.60 towards the assumed mortgages, interest, and related expenses between July 26, 1995 and July 20, 2004. (The latter payments were documented on a payment history.) Ocean National counters that the Escrow Agreement was not recorded and that neither Mr. James’ payments pursuant to that agreement nor the Walkers’ lack of equity in the Property is relevant to the instant dispute regarding the Property. We agree.
| mMr. James quotes the reasoning in Versai Management, Inc. v. Monticello Forest Products Corp., 479 So.2d 477 (La.App. 1st Cir.1985), that “[a]n acceptance of such an option within the stipulated time is effective against third persons and relates back to the time the option was recorded.” 479 So.2d at 481. He further cites that case for the proposition that the recording of the sale is not only retroactive, but also has the effect of rendering intervening transactions null and void as to the Property. His argument apparently is that his ownership interest in the Property likewise related back to the time the Agreement to Purchase was recorded and rendered the intervening recordation of Ocean National’s judgment invalid. This argument, however, is belied by the jurisprudence, discussed above, holding that a judicial mortgage attaches to property in the judgment debtor’s name regardless of whether the judgment debtor remains the actual owner. In this case, even assuming Mr. James’ status of owner of the Property relates back to the date the Agreement to Purchase was recorded, August 25, 1995, the Walkers remained the owners of record of the Property until October 17, 2004 when the cash sale was recorded. By recording its judgment against Mrs. Walker before the act of cash sale was recorded, Ocean National obtained a valid judicial mortgage. As none of the methods of extinguishing the mortgage enumerated in La. C.C. art. 3319 have been invoked, the judicial mortgage was erroneously found null and void by the trial court.
Finally, Mr. James alleges that he relied on the public records in entering the Agreement to Purchase and that he is a third party protected by La. R.S. 9:2756 and La. R.S. 9:2722. He thus alleges that since his Agreement to Purchase the Property was recorded first, Ocean National’s subsequently recorded judgment is ineffective as to his rights in the Property, and he is entitled to have the judicial [, mortgage partially released. Ocean National does not dispute that Mr. James’ special mortgage is superior in rank to its judicial mortgage and that it does not affect Mr. James rights under the special mortgage. However, Ocean National disputes the nature of the right that mortgage secures. Ocean National emphasizes that the special mortgage, by its terms, secures only the Walkers’ obligation to deliver title to Mr. James.
*1103 Mr. James’ special mortgage secures an obligation to perform a future act. La. C.C. art. 3293. Article 3293 defines the obligation secured by such a mortgage as the damages caused by the mortgagor’s failure to perform the act. Id. Moreover, La. C.C. art. 3294 provides that “[a] mortgage that secures an obligation other than one for the payment of money secures the claim of the mortgagee for the damages he may suffer from a breach of the obligation, up to the amount stated in the mortgage.” Indeed, the special mortgage at issue expressly recites the maximum damage amount it secures — “three times the Price stated above [$182,429.04].” The official comments to Article 3294 explain its purpose as follows:
Since the right of the mortgagee is limited to the seizure and sale of the mortgaged property, it follows that his recourse must be measured by some amount of money. If the obligation which the mortgage secures is one for the performance of an act, the mortgagee obviously will have to convert his claim into one for damages.
La. C.C. art. 3294, Official Revision Comment.
Ocean National further points out that if Mr. James desired to invoke his right as a superior mortgage holder and have the inferior mortgage cancelled, his remedy was to refuse to take title to the Property, obtain a judgment against the Walkers fixing the amount of damages secured by the special mortgage, and have the Property seized and sold at a sheriffs sale. See La. C.C. art. 3319. Mr. James’s response is that he should not have to resort to the expense and costs of a \msheriffs sale. However, he cites no authority for his position. Moreover, his position is inconsistent with the Civil Code definition of a mortgage, which is a security device that gives “the mortgagee, upon failure of the obligor to perform the obligation that the mortgage secures, the right to cause the property to be seized and sold in the manner provided by law and to have the proceeds applied'toward the satisfaction of the obligation in preference to claims of others.” La. C.C. art. 3279. The Code also provides that an effect of a mortgage is that it gives a mortgagee preference to creditors “whose rights become effective after the mortgage becomes effective as to them.” La. C.C. art. 3307(3). Mr. James’s special mortgage thus gave him a preference over Ocean National’s judicial mortgage. However, the relevance of that preference only comes into play once the property is seized and sold at sheriffs sale.
In sum, we find the trial court erred in granting the declaratory relief Mr. James requested. Ocean National’s judicial mortgage validly attached to the Property, and none of the methods of extinguishing the mortgage enumerated in La. C.C. art. 3319 were established.

DECREE

For the foregoing reasons, the judgment of the trial court is reversed insofar as it found the judgment of Ocean National null and void as to the Property and the recorder of mortgages for Orleans Parish is ordered to reinscribe that mortgage insofar as it relates to the Property.
REVERSED AND RENDERED.

. The other defendant, Capital One Bank, did not appeal. The trial court’s judgment against it is final.

. A bond for deed contract is defined by statute as "a contract to sell real properly, in which the purchase price is paid by the buyer to the seller, in installments and in which the seller after payment of a stipulated sum agrees to deliver title to the buyer.” La. R.S. 9:2941

. Pursuant to La. C.C. arts. 3300 and 3302, the filing of such judgments into the mortgage records created a judicial mortgage in favor of the judgment creditor on all the judgment debtor's immovable property located in the parish.

. As Ocean National points out, transferring the property encumbered by a judicial mortgage to a third party, without paying the amount of the judgment, is not one of the ways in which a mortgage may be extinguished. Rather, the third party simply becomes a "third possessor” under La. C.C. art. 3315.