*197
 
 STEWART, J.
 

 | j Defendants/Appellants, Dorothy Mor-man Flynn, Mary Helen Morman, Wash Morman, and Alfredia Q. Morgan (“the Mormans”), are appealing a summary judgment granted in favor of the Plaintiff/Appellee, Carter Logging, L.L.C., (“Carter”). Finding no merit in the Mor-mans’s claims, we affirm the trial court’s judgment.
 

 Facts
 

 This case involves a dispute over a sale of timber on a 240-acre tract of land. Prior to the execution of the timber deed at issue, Carter drafted and executed a cash deed transferring Alfredia Morman’s 1/5 interest in a 38-acre tract of land to Carter Logging on March 22, 2004 for the sum of $1,200.00.
 
 [1]
 
 Carter claims that it checked the title on the 38-acre tract and confirmed that the tract was owned by the heirs of Orie Norman, who was deceased and left five children: Mary Helen Mor-man, Euradell Aubrey, Dorothy Morman Flynn, Wash Morman, and Alfredia Mor-man. Carter drafted an Affidavit of Death and Heirship stating that fact. The affidavit was also executed on March 22, 2004.
 

 Shortly thereafter, Carter and the Mor-mans executed a timber deed, in which Carter purchased the timber on the 240-acre tract of land. In the Timber Deed, the Mormans warranted that they owned all of the timber on this tract of land and had good, merchantable, and unencumbered title to it. Sometime between February and March of 2004, Carter paid the Mormans $8,000.00, which was to serve as an advance on the timber that would be harvested from the 240-acre tract. Pursuant to the timber deed, which [ .¿provided for 80 acres to be cut per year and to be planted by Carter Logging, they began harvesting the timber.
 

 On April 6, 2005, Carter was forced to cease harvesting the timber after Andre Morman and Scotty Morman, who were owners of the tract but not parties to the timber deed, filed suit against Carter, alleging that together they owned 75% of the 240-acre tract in question. Carter settled this suit for the sum of $10,650.00.
 

 Carter claims that they had title work performed on the 38-acre tract, that the Mormans owned 80% of the timber on this tract, and that the Mormans told Carter that they had the same ownership interest in the 240-acre tract. The Mormans deny this allegation and argue that Alfredia Morman did not own 1/5 interest in the 38-acre tract. Rather, the 38-acre tract had been partitioned by the same attorney, David Newell, who originally represented Carter in this case.
 
 [2]
 
 Therefore, the 38-acre tract was not owned in indivisión, like the 240-acre tract.
 

 On April 4, 2006, Carter subsequently filed suit against the Mormans to recover the $8,000.00 advanced to them, along with the $10,650.00 paid to Andre Morman and Scotty Morman, plus costs, attorney’s fees and interest from the date of judicial demand.
 

 Carter filed a motion for summary judgment, alleging that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Carter contends that the Mormans breached the timber deed by warranting that they were the owners of the timber and had good, | .¡merchantable, and unencumbered title to the timber when, in fact, there were two other co-owners. After review
 
 *198
 
 ing the timber deed and other supporting evidence, the trial court granted the motion on July 2, 2008. It held that there was no genuine issue of material fact, and that Carter was entitled to judgment as a matter of law, because the Mormans breached the warranty of good and merchantable title contained in the timber deed, as well as the warranty of eviction implied by law in every sale. The trial court stated that the language in the deed was clear and unambiguous, rendering parol evidence inadmissible. Carter was awarded $18,650.00, plus legal interest and the cost of the proceedings.
 

 LAW AND DISCUSSION
 

 Extrinsic Evidence
 

 The Mormans assert that the trial court erred in granting Carter’s motion for summary judgment and present three main issues to support this assertion. In the first issue, the Mormans assert that ambiguity in the timber deed requires it to be interpreted with reliance on extrinsic evidence.
 

 Carter contends that the timber deed is unambiguous and proves that the Mor-mans clearly breached the warranty of good and merchantable title and the implied warranty of eviction.
 

 Appellate courts review summary judgments
 
 de novo
 
 under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate.
 
 NAB Natural Resources, L.L.C. v. Willamette Industries, Inc.,
 
 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477.
 

 I/The Louisiana Code of Civil Procedure article 966 states in pertinent part:
 

 A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiffs motion may be made at any time after the answer has been filed. The defendant’s motion may be made at any time.
 

 (2)The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
 

 B.The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.
 

 Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art.2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art.2046. Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La. C.C. art.2048.
 

 A person who signs a written contract is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain its meaning.
 
 Dulin v. Levis Mitsubishi, Inc.,
 
 2001-2457 (La.App. 1 Cir. 12/20/02), 836 So.2d 340,
 
 writ denied,
 
 2003-0218 (La.3/28/03), 840 So.2d 576.
 

 When a contract may be interpreted from the four corners of the agreement, without consideration of extrinsic evidence,
 
 *199
 
 the interpretation is a matter of law.
 
 ScenicLand Construction Co., L.L.C. v. St. Francia Medical Center, Inc.
 
 41,147 (La.App.2d Cir.7/26/06), 936 So.2d 251;
 
 NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., supra.
 
 In such cases, appellate review considers whether the trial court was legally correct or legally incorrect.
 
 Lawrence v. Terral Seed, Inc.,
 
 35,019 (La.App.2d Cir.9/26/01), 796 So.2d 115,
 
 writ denied,
 
 2001-3134 (La.2/1/02), 808 So.2d 341.
 

 In the instant case, the timber deed may be interpreted from within the its four corners, without the use of extrinsic evidence. The timber deed included the following statement:
 

 4. Seller warrants that all timber located on the above described property, and sold to Buyer, is owned by the Seller and that the Seller has good, merchantable and unencumbered title thereto and have the right to sell the same.
 

 The Mormans contend that the timber deed is ambiguous because Carter argued at the motion for summary judgment hearing that the “all timber” language within the timber deed actually meant eighty percent. The Mormans misinterpreted Carter’s statement. Carter was referring to La. R.S. 3:4278.2, which requires the consent of at least eighty percent of the ownership interest in the land before a buyer who purchases the timber can remove it. So long as the buyer has the consent of at least eighty percent of 16the co-owners or co-heirs, he can remove one hundred percent of the timber. Louisiana Revised Statute 3:4278.2(B) states, in pertinent part:
 

 B. A buyer who purchases the timber from a co-owner or co-heir of land may not remove the timber without the consent of the co-owners or coheirs representing at least eighty percent of the ownership interest in the land, provided that he has made reasonable effort to contact the co-owners or co-heirs who have not consented and, if contacted, has offered to contract with them on substantially the same basis that he has contracted with the other co-owners or co-heirs.
 

 This contention bears no relevance to the fact that the Mormans breached the timber deed with Carter by selling them the rights to timber, when they had no right to sell. The language in the timber deed clearly and unambiguously states that the Mormans are warranting that all the timber on the 240-acre tract sold to Carter, is owned by the Mormans and that the Mor-mans have good, merchantable and unencumbered title to this property. Even though the Mormans did not have “good merchantable, and unencumbered title,” such that they could convey any timber to Carter, they nevertheless accepted the $8,000.00 advance from Carter for timber that they could not convey.
 

 The Mormans also argue that the following language includes warranty claims and frees them from liability. Therefore, there remains a genuine issue of material fact. The timber deed states:
 

 7. Buyer agrees to forever indemnify and hold Seller harmless from any and all:
 

 |7(a) liability for personal injuries or property damage sustained by an employee, agent, or any third party;
 

 (b) claims, demands, debts, liens, causes of action, civil or criminal penalties, whatsoever;
 

 (c) other kinds of action, arising out of or in any manner incident to the timber operations conducted by Buyer under this contract.
 

 
 *200
 
 Agreements to indemnify are strictly construed, and the party seeking to enforce such an agreement bears the burden of proof.
 
 McGill v. Cochran-Sys-co Foods,
 
 35,898 (La.App. 2 Cir. 5/8/02), 818 So.2d 301. Moreover, indemnity is not available to a party who is actually negligent.
 
 Id.
 
 In this case, the Mormans failed to overcome this burden to prove that they are protected under the indemnification provision in the timber deed.
 

 Additionally, the Mormans breached the warranty of eviction. The seller warrants the buyer against eviction, which is the buyer’s loss of, or danger of losing, the whole or part of the thing sold because of a third person’s right that existed at the time of the sale. La. C.C. art. 2500. The warranty against eviction is implied in every sale. La. C.C. art. 2503. A buyer who avails himself of the warranty against eviction may recover from the seller the price he paid, the value of any fruits he had to return to the third person who evicted him, and also other damages sustained because of the eviction with the exception of any increase in the value of the thing lost. La. C.C. art. 2506.
 

 It was implied that Carter would not be evicted while harvesting the timber that the Mormans sold to it. Unfortunately, the Mormans breached |8this warranty when Carter was evicted by Andre and Scotty Morman, which resulted in Carter sustaining additional damages in the amount of $10,650.00. As such, the Mor-mans are answerable to Carter for those damages.
 

 The trial court granted Carter’s motion for summary judgment, finding that there was no genuine issue of material fact and that Carter was entitled to judgment as a matter of law. More specifically, the trial court found that the Mormans breached the warranty of good and merchantable title contained within the timber deed and the implied warranty of eviction.
 

 After reviewing the record in its entirety, we find no manifest error in the trial court’s conclusion that the summary judgment was appropriate, based on the Mor-mans’ breach of the above mentioned warranties. Therefore, this assignment of error bears no merit.
 

 Parol Evidence
 

 In the second issue, the Mormans contend that Carter waived its objection to parol evidence when it relied on parol evidence in its pleadings, arguments and depositions by using verbal statements made by the Mormans. In the third and final issue, the Mormans argue that Carter waived its objection to parol evidence because Carter was aware that it was not getting all the timber as stated in the timber deed and that the timber deed did not reflect the intent of the parties.
 

 As a general rule, parol evidence is inadmissible to modify, vary, explain, or contradict the terms of a writing.
 
 Kean v. Lemaire,
 
 451 So.2d 151 (La.App. 1 Cir.1984). However, there are limited circumstances where parol evidence will be admissible. La. C.C. art. 1848 provides:
 

 Testimonial or other evidence may not be admitted to negate or .vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent valid oral agreement.
 

 The Mormans argue that even if the wording of the timber deed is clear and unambiguous, evidence is admissible to show that the agreement was modified or to show a mistake. As we discussed in the first assignment of error, the timber deed is clear and unambiguous. Carter’s intent
 
 *201
 
 and the Mormans’ intent can be determined from the four corners of the timber deed. For this reason, we cannot consider evidence, in addition to the actual timber deed.
 

 As we have already concluded that the trial court did not err in determining the timber deed was clear and unambiguous and extrinsic evidence is not permitted, a detailed discussion of second and third assignments of error is pretermitted.
 

 CONCLUSION
 

 For the reasons discussed above, we affirm the trial court’s judgment. Cost of this appeal are assessed against the Mor-mans.
 

 AFFIRMED.
 

 [1]
 

 . Carter subsequently transferred the property back to Alfredia Morman for the sum of $800.00.
 

 [2]
 

 . David Newell testified under oath that he could not recall being asked to perform title work on the 38-acre tract.