KNOLL, J.,
dissenting.
|)For the following reasons, I respectfully dissent.
In my opinion, the primary question before the court is simple: did the trial court commit manifest error in finding, as a matter of fact, Cimarex[1] did not “state a reasonable cause” for its failure to timely pay the mineral royalties owed to Orange River? Whether an action was reasonable is a question best left to the sound judgment of the trial court, and I do not find any evidence of manifest error in the trial court’s holding. Indeed, the Mauboles’ claim to the royalties was so tenuous, both legally and factually, that no reasonable party would have relied on their representations to withhold payments from Orange River.
However, I do find the trial court erred as a matter of law awarding Orange River excessive damages, and would remand for the limited purpose of recalculating the statutory damages award under Mineral Code art. 212.23(B).
DISCUSSION
A. The Operation of Mineral Code arts. 212.21-212.2S
|2The majority opinion defines the primary issue as whether Cimarex had a “reasonable basis to invoke a concursus proceeding.” (Op. at 933). However, there is no provision in the Mineral Code imposing penalties for unreasonably filing a con-cursus proceeding. The proper question before this Court is whether Cimarex, as a mineral royalties obligor, stated a “reasonable cause for nonpayment” for its failure to pay royalties to Orange River within 30 days of receipt of written notice of default. The relevant articles are as follows:
§ 212.21. Nonpayment of production payment or royalties; notice prerequisite to judicial demand
If the owner of a mineral production payment or a royalty owner other than a mineral lessor seeks relief for the failure of a mineral .lessee to make timely or proper payment of royalties or the production payment, he must give his obli-gor written notice of such failure as a prerequisite to a judicial demand for damages.
§ 212.22. Required response of obli-gor to notice
The obligor shall have thirty days after receipt of the required notice within which to pay the royalties or production payments due or to respond by stating in writing a reasonable cause for nonpayment. The payment or nonpayment of the sums due or stating or failing to state a reasonable cause for nonpayment within this period has the following effect.
§ 212.23. Effects of payment or nonpayment with or without stating reasonable cause therefor; division order
A. If the obligor pays the royalties or production payments due plus the *948 legal interest applicable from the date payment was due, the owner shall have no further claim with respect to those payments.
B. If the obligor fails to pay within the thirty days from notice but states a reasonable cause for nonpayment, then damages shall be limited to legal interest on the amounts due from the date due.
C. If the obligor fails to pay and fails to state a reasonable cause for failure to pay in response to the |snotice, the court may award as damages double the amount due, legal interest on that sum from the date due, and a reasonable attorney’s fee regardless of the cause for the original failure to pay.
The procedure set forth in these articles is relatively simple. Once Orange River gives Cimarex written notice and demand for its nonpayment of royalties, Cimarex has 30 days from receipt of notice to either pay the royalties or explain in writing why it will not pay. If Cimarex does not pay within 30 days, and fails to explain why its nonpayment was “reasonable,” the court may award double damages, legal interest, and attorneys’ fees.
We are left with two questions: 1) Did Cimarex’s deposit of funds into the court registry act as the legal equivalent of paying royalties, thereby satisfying article 212.22? 2) If not, did Cimarex state a “reasonable cause” for its nonpayment? The answer to both of these questions is no.

B. Did Cimarex’s Deposit of Fimds into the Court Registry Satisfy Its Obligation to Pay Under Mineral Code art. 212.22?

The record shows Orange River sent written demand for payment on November 16, 2004, and Cimarex received the notice on November 18, 2004. Cimarex responded that no payments would be made because Mauboles had raised a competing claim to the royalties. On December 20, 2004, Cimarex initiated concursus. The allegedly disputed funds were deposited into the court registry on December 22, 2004.[2]
La. Code Civ. Proc. art. 4658 states: “After the deposit of money into the registry of the court, the plaintiff [in concursus] is relieved of all liability to all of the defendants for the money so deposited.” According to Cimarex, under article 4658, 14the deposit of funds into the registry of the Court constitutes payment under the law and satisfies the requirements of the Mineral Code. We need not resolve this issue at the present time.
Assuming the timely deposit of funds into the Court registry would comply with the requirement of article 212.21 to pay royalties, Cimarex simply missed the deadline. Mineral Code art. 212.21 requires an obligor to pay disputed funds within 30 days of receipt of written notice of a dispute. This is a strict deadline. Cimarex admits it received Orange River’s demand notice on November 18th. The allegedly disputed funds were not deposited in the Court’s registry until December 22nd, 34 days after Cimarex received notice. Cima-rex states no good reason for its failure to file the concursus within the time limits of Mineral Code art. 212.21.
Significantly, Orange River was not made a party to the original concursus proceedings. Orange River was not added to the concursus until Cimarex filed an amended petition on February 3, 2005, *949 over ninety days after Cimarex received written notice of nonpayment. The failure to include Orange River as a party from the outset is simply inexplicable. Cimarex clearly knew Orange River had a claim on the royalties; indeed, Orange River’s claim on the royalties was the only legally cognizable claim. Cimarex’s addition of Orange River into the concursus was patently untimely and does not satisfy its obligations under the Mineral Code.
C. Was Cimarex’s Failure to Pay “Reasonable? ”
Perhaps the most crucial question before this Court is whether the trial court erred in finding Cimarex did not “state a reasonable cause for nonpayment” under Mineral Code art. 212.23(B). Appellate review of a verdict rendered after a bench trial is subject to the same manifest error standard as a jury verdict. Pinsonneault v. Merchants & Farmers Bank & Trust Co., 2001-2217 (La.4/3/02), 816 So.2d 270, | r,273. The trial court’s determination of a party’s good faith is highly contingent on credibility evaluations, and is due a high degree of deference. Authement v. Larpenter, 97-0579 (La.App. 1 Cir. 5/15/98), 713 So.2d 712, 715, writ denied, 724 So.2d 771.
Cimarex argues it reasonably believed there were competing claims to the royalty money based on 1) a letter from the Mau-boles’ attorney, Kenneth Privat, claiming the prescription interruption clause in the contract between the Mauboles and Ereu-nao was invalid, and 2) a telephone conversation in which Privat suggested there may have been some sort of fraud on the part of Ereunao.
This argument fails both on the facts and on the law. First, the Mauboles never clearly articulated any facts in support of their fraud claim. When “pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity.” La.Code Civ. Proc. art. 856. At no point have the Mauboles clearly articulated any claim of fraud; indeed, their pleadings in the concursus proceeding do not even allege fraud. Although Cimarex paid the Mauboles $7,500 to offset their legal fees in a suit against Ereunao, no such suit was ever filed. Presumably the Mauboles realized they did not have sufficient evidence to prosecute any claim against Ereunao. At some point Cimarex should likewise have realized the Mau-boles’ stated claim was simply bogus.[3]
I also note the mineral royalties in question were due in April 2004, yet the con-cursus was not filed until December 2004. If Cimarex had believed there was a |fireal dispute over the royalties, it should have filed the concursus when those royalties were due. Instead, Cimarex delayed making payment as long as it possibly could. This illegitimate delay is a clear sign of bad faith on Cimarex’s part.'[4]
*950 More importantly, even if the Mauboles had been able to demonstrate fraud on the part of Ereunao, it would have had no legal effect on the validity of Orange River’s interest. Orange River purchased the mineral royalty rights in good faith and in full reliance of public records showing Er-eunao as owner of those rights. For at least 120 years Louisiana law has protected the rights of a bona fide purchaser of immovable property[5] who relies on public records. Broussard v. Broussard, 13 So. 699, 45 La. Ann. 1085, 1088 (La.1893)(“It is settled in this court by a jurisprudence too inveterate to admit of question that whatever the secret equities between a vendor and vendee, the former can not claim them against a subsequent purchaser in good faith.”), Cole v. Richmond, 156 La. 262, 275, 100 So. 419 (La.1924)(“Neither fraud, nor want of consideration, nor secret equities between the parties, who have placed on the public records a title valid upon its face, can be urged against a bona fide purchaser or value, who has acted on the faith of such recorded title.”)
This doctrine was codified in 1984 as Civil Code article 2035:
Nullity of a contract does not impair the rights acquired through an onerous contract by a third party in good faith.
If the contract involves immovable property, the principles of recordation apply to a third person acquiring an interest in the property whether by onerous or gratuitous title.
|7In Sonnier v. Conner, 43,811 (La.App. 2 Cir. 12/03/08) 998 So.2d 344, writ denied, 6 So.3d 773 (La.2009), plaintiff Lovenda Sonnier was the longtime possessor of three tracts of land with a convoluted chain of title. During the 1980s and 1990s, these tracts of land had apparently been transferred to Rennie and Gloria Sonnier. Plaintiff alleged the acts of sale were simulations and absolute nullities under Civil Code art. 2025. Id. at 348. The tracts were later passed to defendants Andrea Sonnier Conner and Thomas Sonnier, who recorded their interests and transferred the tracts to Diamond McCattle Co., LLC. Id. at 349.
Plaintiffs claim against Diamond McCattle was dismissed based on an exception of no cause of action, as Diamond McCattle was held to be a bona fide purchaser and protected under article 2035. Even if plaintiff proved the prior acts of sales were absolute nullities, this would have no effect on Diamond McCattle:
The transferee in the exchange of an immovable need only look to the public records to determine ownership and, if such records show no adverse claim of ownership, the transferee obtains good title from the record owner notwithstanding the transferee’s personal knowledge of title defects outside the record. McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909); Hodgeson v. McDaniel, 233 La. 180, 96 So.2d 481 (1957); Speights v. Nance, 142 So.2d 418 (La.App. 2d Cir.1962); Succession of Wilson v. Wilson, 509 So.2d 714 (La.App. 3d Cir.1987), unit denied, 512 So.2d 439 (La.1987); Anglin v. Anglin, 05-1233 (La.App. 1st Cir.6/9/06), 938 So.2d 766.
Id. at 361.
Similarly, if the Mauboles had been able to prove fraud by Ereunao — which they did not even come close to doing — Ereu-nao’s fraud would in no way affect Orange River’s status as a bona fide purchaser. There is no question that Orange River is *951 a third party to the contract between Er-eunao and the Mauboles, that Orange River acted in good faith, and that it relied on the recorded title in favor of Ereunao and its successors. Orange River is entitled to the full protection of Civil Code art. |¾2035.
Mauboles’ alleged claim to the mineral royalties is without factual or legal support, and the trial court did not commit manifest error in finding Cimarex’s refusal to timely pay was unreasonable.

D. Does Filing a Concursus Immunize Cimarex from Damages?

Cimarex argues filing a concursus should immunize it from statutory damages. As explained above, this argument fails because Cimarex failed to file the concursus and deposit funds with the court within the thirty day limit set forth in Mineral Code arts. 212.21-23. Moreover, Cimarex’s decision to file the concursus was objectively unreasonable because, as has been made clear in the preceding sections, there was neither a factual nor a legal basis for the Mauboles’ claim against Orange River and thus no actual controversy over the funds.
We recognize the value of concursus in resolving a dispute involving several bona fide claimants. However, concursus is designed to prevent stakeholders from actual competing claims, not imagined or obviously meritless claims. In Irion v. Standard Oil Co. of Louisiana, 199 La. 363, 6 So.2d 143, 146 (1942), plaintiff obtained a judgment requiring Standard Oil to pay past due mineral royalties. The defendant argued it did not have to satisfy this judgment as other claimants to the money might arise.[6] This Court found “no substance whatever” in this contention, as the Avoyelles Parish public records reflected Irion’s “clear and encumbered title to the royalty interest.” Id. at 145.
Irion is almost directly on point to the present case, as the relevant public records show Orange River is a bona fide purchaser and the sole owner of the royalty interests. This Court also recognized in Irion that a “debtor cannot legally resist 19payment of the debt to his creditor merely because a third person might ultimately be recognized as having an interest in the money due.” Id. Standard Oil’s right to a concursus would have arisen only if it “actually feared” competing claims would arise, and the “fact that someone else might have an inchoate interest in the royalties” did not suffice. Id. at 371, 6 So.2d 143 (emphasis added).[7]
Given the strong policy set forth in the public records doctrine and Civil Code article 2035,[8] it cannot be said Cimarex had *952 an actual and reasonable fear that the Mauboles would assert a competing claim. The majority recognizes concursus is inappropriate where the alleged competing claim is “outright frivolous.” Given the clear and unambiguous language in the interruption of prescription clause and Orange River’s status as a bona fide purchaser under Civil Code art. 2035, the competing claim raised by the Mauboles was “outright frivolous.”

E. The Damages Award

The trial court awarded Orange River unpaid royalties of approximately $3.2 million dollars, plus statutory damages of approximately $6.4 million dollars. The court held Mineral Code art. 212.23(B), which allows an award of “damages double the amount due,” permits a court to award both the unpaid royalties and penalty | indamages in the amount of double the unpaid royalties, thereby effectively trebling the damages award. I would reverse the damages award as excessive.
The far more natural reading of article 212.23(B) is to permit the plaintiff a total award of double the amount of unpaid royalties. As a simplified example, if the unpaid royalties total $100, the court has discretion to “double” the award by adding an additional $100 in statutory damages, for a total of $200.
If the Legislature had intended article 212.23(B) to permit a treble damages award, it would have said so. Several Louisiana statutes unambiguously permit an award of treble damages.[9] This is not one of them. Moreover, as Mineral Code article 212.23(B) is in the nature of a penal statute, it must be strictly construed in favor of the defendant. Louisiana Bag Company, Inc. v. Audobon Indemnity Company, 2008-0453 (La.12/2/08), 999 So.2d 1104, 1120. I would remand for a recalculation of damages consistent with the statute.

. For the sake of clarity, I follow the majority opinion in collectively referring to Cimarex Energy Co., Ceniarth, Ltd., Palace Exploration Co., and RZ, Inc. as "Cimarex;” and to Orange River Royalties, LLP, Mission Royalty Quest, LLC, Fort Worth Operating Co., LLC, Coyote Ventures, LLC, and Richard Martter as “Orange River.”

. La.Code of Civ. Proc art. 4658 states a party may deposit money into the court registry “with leave of court.” The order permitting deposit was signed on December 22, 2004, and it appears the deposit was made the same day.

. It appears the Mauboles simply did not read the contract and were surprised to later discover the existence of the prescription interruption clause. This, of course, is no defense. "The law of Louisiana is that one who signs an instrument without reading it has no complaint." Tweedel v. Brasseaux, 433 So.2d 133, 138 (La.1983); "A person who signs a written contract is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain its meaning." Carter Logging, LLC v. Flynn, 44,188 (La.App. 2 Cir. 4/8/09), 7 So.3d 195, 198.

. See Gulf Pipe Line Co. v. Warren, 45 S.W.2d 719, 722 (Tx.Civ.App.l931)(When a "party comes into court showing a disposition to delay the trial of the issues between the claimants and conducts himself in such manner as to show that he is encouraging one of the parties in its claim and hindering the other party from having an adjudication of the question involved, he cannot then claim the *950 protection accorded by the law to a stakeholder.”)

. "A mineral right is an incorporeal immovable.” Mineral Code art. 18.

. Plaintiff Irion was simultaneously embroiled in a separate lawsuit regarding the mineral rights in the same tract of land.

. Numerous federal cases have held there must be an actual and present competing claim to give rise to an interpleader action, the federal analogue of concursus. See Treinies v. Sunshine Mining Co., 308 U.S. 66, 72, 60 S.Ct. 44, 84 L.Ed. 85 (1939)(There must be a "real controversy” between adverse claimants); Bass v. FSLIC, 698 F.2d 328, 331 (7th Cir.1983)(Party seeking interpleader must show a "real and reasonable fear of exposure to double liability”); General Accident Group v. Gagliardi, 593 F.Supp. 1080, 1087 (D.Conn.1984)(Interpleader only arises where the competing claims "meet a minimal threshold of substantiality,” and "the fear of multiple litigation or liability cannot be groundless."); New Jersey Sports Prod., Inc. v. Don King Prod., Inc., 15 F.Supp.2d 534, 539 (D.N.J.1998)(Interpleader requirements not met where "one of the claims clearly is devoid of substance").

.In Blevins v. Manufacurers Record Publishing Co., 235 La. 708, 771-72, 105 So.2d 392 (1958), Justice Tate referred to the "public policy of this state that ... there can be no actual owner of immovable property, so far as third persons are concerned, other than the owner of record," iquoting Baker v. Atkins, 107 La. 490, 32 So. 69 (1901).

. La. Rev.StaL. § 3:4278.1 (Unlawful cutting of timber leads to damages “for three times the fair market value of the trees cut”); La. Rev.Stat. § 22:1023(F)(permitting “treble damages” for unlawful disclosure of private genetic information); La. Rev.Stat. § 30:2027 (Employee may recover “triple damages” for retaliatory termination for environmental whistleblowing); La. Rev.Stat. § 39:2163 (Employee may recover "treble damages” for retaliatory termination for uncovering employers’ fraud in claiming hurricane relief monies); La. Rev.Stat. § 51:444 (Sales representative may recover "treble damages” for nonpayment of commissions). La. Rev.Stat. § 51:1409 (Permitting recovery of "three times the actual damages sustained” in unfair trade practice claim.)