# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 12-1121


ROBBIE TRAHAN

VERSUS

DOERLE FOOD SERVICES, LLC, ET AL.




**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20084643
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE

**********

## JIMMIE C. PETERS
## JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders, and Jimmie C. Peters, Judges.



**REVERSED IN PART, AND REMANDED.**

**John Edmund McElligott, Jr.**
**Kevin M. Dills**
**Davidson, Meaux, etc.**
**P. O. Box 2908**
**Lafayette, LA 70502-2908**
**(337) 237-1660**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
     **HUB Enterprises, Inc.**
     **First Mercury Ins. Co.**

**Susan A. Daigle**
**Daigle, Jamison & Rayburn**
**303 W. Vermilion St., Ste 210**
**Lafayette, LA 70501**
**(337) 234-7000**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **Hercules Liftboat Co., LLC**
     **Doerle Food Services, LLC**

**Kenneth Paul Mayers**
**Attorney at Law**
**P. O. Box 2217**
**Lafayette, LA 70502-217**
**(337) 237-9500**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Robbie Trahan**

**Christopher T. Lee**
**Attorney at Law**
**P. O. Box 3525**
**Lafayette, LA 70502-3525**
**(337) 232-2390**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Robbie Trahan**

**PETERS, J.**

This appeal arises from a suit filed by Robbie Trahan against Hercules Liftboat Company, LLC (Hercules) and Doerle Food Services, LLC (Doerle Food Services) seeking to recover damages he sustained in an August 14, 2007 accident. In that litigation, Hercules filed a third-party demand against Trahan's employer, HUB Enterprises, Inc. (HUB) and its liability insurer, First Mercury Insurance Company (First Mercury), seeking to recover the expenses it incurred in defending Trahan's lawsuit. The matter now before us involves an appeal by HUB and First Mercury seeking reversal of part of the grant of a summary judgment in favor of Hercules awarding it indemnification from HUB for the expenses it incurred in the litigation. For the following reasons, we reverse that part of the trial court's grant of the summary judgment addressed in this appeal, and remand this matter to the trial court for further proceedings.

## DISCUSSION OF THE RECORD

The basic facts applicable to this appeal are not in dispute. On August 8, 2006,[1] HUB and Hercules entered into a written agreement entitled "SECURITY CONTRACT" (hereinafter referred to as "Security Contract") wherein HUB, as an independent contractor, agreed to provide Hercules with "uniformed/unarmed, guard protection service" at locations to be identified by Hercules. In a separate document described as an "ACCESS AGREEMENT" (hereinafter referred to as "Access Agreement") made effective August 8, 2006, HUB and Hercules agreed to indemnify each other for acts or omissions of their respective employees or agents.

One of the locations on which HUB ultimately provided security services was property in Lafayette, Louisiana, that Hercules subleased from Doerle

---

[1] The contract bears the date of August 8, 2006, although the document itself was executed by the representative of HUB on August 18, 2006, and by the representative of Hercules on August 24, 2006.

Properties, LLC (Doerle Properties) pursuant to a written agreement entitled "SUBLEASE AGREEMENT" (hereinafter referred to as "Sublease Agreement") made effective October 7, 2005.[2] This Sublease Agreement also contained an indemnity agreement wherein Hercules agreed to indemnify Doerle Properties for certain claims made against it.

On August 14, 2007, Robbie Trahan was working on the Doerle Properties location when a severe storm caused his guard shack to topple over. On year later, he instituted this suit for damages against Hercules and Doerle Food Services.

After both defendants joined issue in the litigation by filing answers, Hercules filed a third-party demand against HUB and First Mercury. In this December 21, 2009 filing, Hercules sought judgment against HUB "for defense and for indemnification for all amounts for which HERCULES may be cast in judgment or may pay in settlement to [Robbie Trahan], for all costs and attorney's fees incurred in prosecuting th[e] Third Party Demand, and for all costs and attorney's fees incurred by HERCULES in defending [Robbie Trahan]'s demand." Additionally, Hercules sought judgment against HUB "for defense and for indemnification for all amounts which HERCULES may be cast in judgment or may pay in settlement to the plaintiff in connection [Robbie Trahan]'s claim against DOERLE and for all costs and attorney's fees incurred by HERCULES in defending [Robbie Trahan]'s demand against DOERLE." Hercules sought similar relief from First Mercury.

On May 5, 2010, Hercules filed a motion for summary judgment addressing the relief prayed for in its third-party demand. This motion was followed on May 17, 2010, by a cross-motion for partial summary judgment filed by HUB and First

---

[2] The Sublease Agreement states that Doerle Properties possessed the property pursuant to a Lease Purchase Agreement entered into on August 26, 2005, wherein B-H Operations of Broussard, L.L.C. was identified as the owner/landlord.

Mercury seeking a judgment to the effect that they did not owe indemnity to Hercules for any expenses associated with its indemnification obligations to Doerle Food Services.

The motion and cross-motion were heard by the trial court on July 12, 2010. After listening to the oral arguments and considering the evidence before it, the trial court rejected the cross-motion for partial summary judgment filed by HUB and First Mercury, and granted Hercules the relief it prayed for, but only as to HUB and not First Mercury.[3] The August 10, 2010 judgment arising from this ruling reads in pertinent part as follows:

> IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT THE Motion for Summary Judgment filed by HERCULES is GRANTED in part. Specifically, this Court finds that a valid contract for defense and indemnity was in effect between HERCULES and HUB at the time of the alleged August 14, 2007 incident involving Plaintiff, Robbie Trahan, and, therefore, HUB owes contractual defense and indemnity to HERCULES, with respect to the claims of plaintiff, ROBBIE TRAHAN, against HERCULES, on all amounts for which HERCULES may be cast in judgment or may pay in settlement to the plaintiff, and for all costs and attorney fees incurred by HERCULES in defending plaintiff's claims.
>
> IT IS FUTHER ORDERED, ADJUDGED, AND DECREED that the above referenced contract for defense and indemnity between HERCULES and HUB extends to and covers the contractual defense and indemnity claim made by Defendant, DOERLE FOOD SERVICES, LLC ("DOERLE"), against HERCULES pursuant to a contract that was in effect between DOERLE and HERCULES at the time of the alleged August 14, 2007 incident.

It is this second paragraph of the judgment that gives rise to this appeal.

The judgment rendered did not constitute a final judgment for the purposes of an immediate appeal. La.Code Civ.P. art. 1915(B). However, before the matter went to trial on the merits, Robbie Trahan settled his claims against Doerle Food Services and Hercules. On June 12, 2012, the trial court executed an order wherein

---

[3] The parties agreed that the insurance coverage issue would not be addressed in the written judgment to be rendered by the trial court, and that the issue would be left for another day.

3

Mr. Trahan, HUB, and First Mercury dismissed all of their claims against Doerle Food Services. In that pleading, HUB and First Mercury reserved all of their rights to fully litigate the indemnification issues⸺including the right to appeal the August 10, 2010 judgment as well as the right to recover certain sums they had paid to Doerle Food Services under protest pursuant to that judgment. Twenty-four days later, on June 26, 2012, Robbie Trahan dismissed his claims against Hercules, acknowledging that he had received nothing from Hercules for the dismissal.

The dismissal of the principal claims had the effect of making the judgment on the indemnity claims final. Recognizing this change in the posture of the judgment, on July 10, 2010, HUB and First Mercury filed a motion to appeal that portion of the August 10, 2010 judgment ordering indemnification to Hercules for any amounts Hercules might be required to pay Doerle Food Services under the terms of the Sublease Agreement with Doerle Properties. The trial court granted the motion on July 12, 2012. In their appeal, HUB and First Mercury asserted in their one assignment of error that the trial court erred in concluding that the indemnity provisions of the Access Agreement extended to cover the indemnification obligations owed by Hercules to Doerle Properties under the Sublease Agreement. Under these facts, HUB and First Mercury argue, the trial court should have granted their motion for partial summary judgment and rejected Hercules' motion for summary judgment on that issue.

## OPINION

"Appellate courts review grants of summary judgment *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, that is, whether there is a genuine issue of material fact

and whether the mover is entitled to judgment as a matter of law." *Alexander v. Terra Nova Ins. Co., Ltd.*, 06-1348, p. 4 (La. App. 3 Cir. 3/7/07), 953 So.2d 152, 155. A fact is "material" if it influences a litigant's ultimate success, potentially assures or prohibits recovery, or resolves the legal dispute. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. An issue is a genuine issue if reasonable persons could disagree on that point; on the other hand, if reasonable people could reach only one conclusion, the issue is not a "genuine" issue and summary judgment is appropriate. *Id.*

In support of its motion for summary judgment, Hercules provided the trial court with the Security Contract and Access Agreement between it and HUB, the Sublease Agreement between it and Doerle Properties, and a copy of the insurance contract between HUB and First Mercury. In support of their motion for partial summary judgment and in opposition to Hercules' motion for summary judgment, HUB and First Mercury provided the trial court with the same Security Contract and Access Agreement.

Louisiana Civil Code Article 2045 provides that "[i]nterpretation of a contract is the determination of the common intent of the parties." Additionally, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. "A person who signs a written contract is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain its meaning." *Carter Logging, L.L.C. v. Flynn*, 44,188, p. 4 (La.App. 2 Cir. 4/9/09), 7 So.3d 195, 198.

It has long been held that "[a] contract of indemnity whereby the indemnitee is indemnified against the consequences of his own negligence is strictly construed, and such a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent act, unless such an intention was expressed in unequivocal terms." *Polozola v. Garlock, Inc.*, 343 So.2d 1000, 1003 (La.1977). Additionally,

> In cases involving similar claims for indemnity for one contracting party's contractual indemnification obligations to a third party, the jurisprudence consistently holds that such a claim is viable only when the applicable contractual language is clear and express and the alleged indemnitor has notice of the obligation and gives his express consent thereto.

*Marshall v. Southwest Louisiana Elec. Membership Corp.*, 05-328, pp. 3-4 (La.App. 3 Cir. 11/2/05), 915 So.2d 1026, 1029.

With regard to HUB's obligations to Hercules, the Access Agreement stated the following:

> In consideration of being allowed access to certain premises and/or vessels and for other good and valuable consideration, the undersigned entity (hereinafter referred to as "Company") agrees with Hercules Liftboat Company, L.L.C., including any parent, subsidiary, or affiliated company thereof (hereinafter Hercules Liftboat Company, L.L.C., its parent, subsidiary and affiliated companies are referred to collectively as "Hercules") as follows: To the fullest extent permitted by law, Company agrees to release, defend, indemnity and hold harmless Hercules, its employees, managers, officers and directors, and vessels owned, operated and/or charged by Hercules (hereinafter collectively referred to as the "Protected Parties") and their respective insurers, from and against all claims, lawsuits, loss, damage, costs and expenses (including, without limitation, contractual defense and indemnity claims and defense costs and attorney fees) of any kind or character for illness, injury or death of employees, servants, agents or representatives of Company, arising out of or attributable to, directly or indirectly, the presence by any such persons or parties on Hercules' owned or operated vessels or premises and/or any work, services, equipment or supplies being furnished to or performed for Hercules, whenever and wherever located, EVEN IF SAID CLAIMS, DEMANDS, SUITS AND/OR CAUSES OF ACTION ALLEGEDLY OR ACTUALLY ARISE SOLELY OR PARTIALLY FROM NEGLIGENCE (INCLUDING SOLE, JOINT, CONCURRENT, ACTIVE OR PASSIVE), STRICT LIABILITY, PRODUCTS

LIABILITY, UNSEAWORTHINESS OF ANY VESSEL AND/OR UNAIRWORTHINESS OF ANY AIRCRAFT ATTRIBUTABLE TO THE PROTECTED PARTIES.

Similar language followed establishing reciprocal indemnity obligations on Hercules in the event that a Hercules employee, agent, servant, or representative instituted a claim against HUB under similar circumstances.[4]

The indemnity agreement found in the Access Agreement provides unequivocally that HUB "agrees to release, defend, indemnity and hold harmless Hercules . . . from and against all claims, lawsuits, loss, damage, costs and expenses . . . of any kind or character for . . . injury of [HUB's employees . . . arising out of . . . the presence of [HUB's employee] on Hercules' . . . premises . . . EVEN IF SAID CLAIMS . . . ARISE SOLELY OR PARTIALLY FROM NEGLIGENCE . . . ATTRIBUTABLE TO [Hercules]." The obligation of HUB and First Mercury with respect to Hercules is not in dispute.

What is in dispute is the effect of the language in the indemnity clause which expands the obligation of HUB and First Mercury to "include contractual defense and indemnity claims." It is this language that Hercules relies on to assert that HUB and First Mercury owes it indemnification for anything it might owe Doerle Properties under the indemnification language found in the Sublease Agreement. Paragraph 14.1 of that document reads as follows:

> Indemnification. Subtenant will indemnify, defend and hold harmless each of Sublessor and B-Hand their respective agents and employees from and against, any and all demands, claims, causes of action, fines, penalties, damages (including consequential damages), losses, liabilities, judgments, and expenses (including, without limitation, attorney fees and court costs) incurred in connection with or arising from: (a) the use or occupancy of the Leased Premises by Subtenant or any person claiming under Subtenant or the condition, upkeep or maintenance of the Leased Premises; (b) any activity, work, or thing done, or permitted or suffered by Subtenant in or about the

---

[4] The language of the Access Agreement makes each employer responsible to its injured worker for all workers' compensation benefits as well as full tort liability.

Leased Premises; (c) any acts, omissions or negligence of Subtenant or any person claiming under Subtenant, or the contractors, agents, employees, invitees, or visitors of Subtenant or any such person; (d) any breach, violation, or nonperformance by Subtenant or any person claiming under Subtenant or the employees, agents, contractors, invitees, or visitors of Subtenant or any such person of any term, covenant, or provision of this Lease or any law, ordinance, or governmental requirements of any kind; (e) (except for loss of use of all or any portion of the Leased Premises or Subtenant's property located within the Leased Premises which is proximately caused by or results proximately from the gross negligence of Sublessor) any injury or damage to the personal, property, or business of Subtenant, its employees, agents, contractors, invitees, visitors, or any other person entering upon the Leased Premises under the express or implied invitation of Subtenant or (f) demands made or suits filed by Sublessor or B-H to enforce the foregoing indemnification provisions. If any action or proceeding is brought against Sublessor or B-H, their employees, officers, owners or agents by reason of any such claim, Subtenant, upon notice from Sublessor, will defend the claim at Subtenant's expense with counsel satisfactory to Sublessor or B-H, as the case may be.

Clearly, this language established contractual defense and indemnity obligations on Hercules with respect to Doerle Properties and its use of the property identified in the Sublease Agreement. It is equally clear that HUB agreed to indemnify Hercules for some "contractual defense and indemnity claims" arising from its contractual relationship with Hercules. Insofar as the trial court reached this conclusion as well, we find no error in that determination.

However, we find that the trial court erred in finding that the indemnification agreement between Hercules and Doerle Properties extended to cover the contractual defense and indemnity claim made by Doerle Food Services against Hercules. First, the Sublease Agreement is between Hercules and Doerle Properties, not between Hercules and Doerle Food Services. The indemnification clause in the Sublease Agreement provides that Hercules "will indemnify, defend and hold harmless . . . Sublessor . . . [its] respective agents and employees. . . ." While Doerle Food Services may be an agent of Doerle Properties, nothing in the

8

record supports that contention. Given the fact that there exists no direct indemnification relationship between Hercules and Doerle Food Services, absent the establishment of Doerle Food ServiceS as the agent of Doerle Properties, HUB does not owe indemnification to Hercules. Crucially, this relationship is a genuine issue of material fact which precludes the grant of a summary judgment.

Furthermore, even assuming that a principal/agent relationship exists such that Doerle Food Services is entitled to indemnification pursuant to the terms of the Sublease Agreement, certain particulars of that indemnification also constitute genuine issues of material fact. Mr. Trahan's claim for damages arose when the guard shack in which he was working separated from its footings. His claim against Doerle Food Services was based on negligence related to the failure of that defendant to safely secure the structure. While the indemnification language of the Sublease Agreement clearly places some indemnification obligations on Hercules, we do not find that the indemnification language found in the Sublease Agreement unequivocally states that Hercules is bound to indemnify Doerle Food Services for its own negligence. *Polozola*, 343 So.2d 1000. If Hercules is not bound to indemnify Doerle Food Services for its own negligence, HUB and First Mercury have no similar obligation to indemnify Hercules for the expenses of Doerle Food Services.

## DISPOSITION

We reverse that portion of the trial court's grant of summary judgment in favor of Hercules Liftboat Company, LLC wherein the trial court found that the indemnification language of the August 8, 2006 Access Agreement between Hercules Liftboat Company, LLC and HUB Enterprises, Inc. extends to cover the contractual defense and indemnification claim made by Doerle Food Services,

9

LLC against Hercules Liftboat Company, LLC pursuant to the October 7, 2005 Sublease Agreement; and we remand the matter to the trial court for further proceedings consistent with this opinion. We assess all costs of this appeal to Hercules Liftboat Company, LLC.

**REVERSED IN PART, AND REMANDED.**